# CHARLESTON.

FRANK S. RODES *v.* GRIFFITH, RODES & COMPANY *et al.*

(No. 5490)

Submitted February 2, 1926.    Decided June 8, 1926.

(Rehearing Denied November 12, 1926.)

DURESS—*Duress May be Asserted Against Third Party Claiming Fruits Thereof, Where Circumstances Impute to Him Notice of Wrong Prior to Accomplishment of Its Purpose.*

Duress may be asserted against a third party claiming the fruits thereof, where the circumstances impute to him notice of the wrong prior to the accomplishment of its purpose.

LIVELY, WOODS, JUDGES, absent.

Appeal from Circuit Court, Kanawha County.

Suit by Frank S. Rodes against Griffith, Rodes & Company and others. Verdict for appellees and appellant appeals.

*Reversed and entered.*

*Lon H. Kelly* and *England & Ritchie*, for appellant.

*R. G. Kelly, Jno. L. Rowan* and *Morton, Mohler & Peters*, for appellees.

LITZ, PRESIDENT:

The plaintiff, Frank S. Rodes, appeals from a decree of the Court of Common Pleas of Kanawha County dismissing his bill for the cancellation of three several notes for $4,546.135 each, dated April 26, 1923, signed by himself as maker and payable to the defendant, John L. Rowan, Trustee, in one, two and three years from date, and a trust deed bearing date therewith, in which the plaintiff and his wife conveyed to said defendant certain lands in the city of Charleston to secure the payment thereof, on the ground of duress.

Griffith, Rodes & Company, a corporation with an authorized capital stock of $10,000.00, divided into shares of

$100.00 each, formerly conducted a tinning business in the city of Charleston. The outstanding capital stock of the company was owned as follows: 33 shares by plaintiff, 35 shares by George M. Griffith, and 25 shares by George C. Griffith. Being financially depressed, some of its creditors in the latter part of 1922 and early part of 1923, obtained judgments which remained unsatisfied. In January, 1923, plaintiff, representing the corporation, proposed to pay the creditors twenty-five per cent. of their claims in cash and ten per cent. monthly thereafter. It seems that he planned to make a loan to the corporation upon being secured by a deed of trust on its property. This arrangement, however, was never executed, and on March 21, 1923, the plant of the company was destroyed by fire. The creditors then became more insistent, without avail.

About April 20, 1923, one Ellis T. Crawford, of Charleston, went to Huntington where plaintiff's brother, C. D. Rodes, resided, and there represented to said C. D. Rodes that plaintiff was being accused of burning the property of the corporation; and that in order to circumvent his prosecution on the charge it would be necessary for the plaintiff to see George M. Griffith at Charleston concerning the matter. C. D. Rodes immediately communicated with another brother, E. T. Rodes, living in Virginia, and arranged a meeting of the two at Charleston for the purpose of consulting George M. Griffith, as suggested by Crawford. C. D. Rodes and E. T. Rodes, after reaching Charleston, conferred with George M. Griffith, who told them that the plaintiff was being accused of burning the property; the State Fire Marshal had been investigating the case; the general public believed he was guilty; and that it would be necessary for him to secure the creditors in order to avoid prosecution. The two brothers of the plaintiff at once interviewed the Fire Marshal who stated that he was investigating the case and had sufficient evidence already to warrant an indictment. They remained over night in Charleston, urging the plaintiff to follow the instructions of Griffith in order to avoid the disgrace of prosecution and possible conviction.

A day or two later Charles G. Peters, of the law firm of Morton, Mohler & Peters, of Charleston, who represented a large number of creditors, called the plaintiff to his office with the view of having the corporation adjudged a bankrupt. Upon the arrival of plaintiff Peters requested him to sign on behalf of the corporation a statement admitting insolvency and expressing its willingness to be adjudged a bankrupt. The plaintiff at this time agreed with Peters that no other remedy was left to the creditors, and taking the statement, promised to return it when signed by George M. Griffith. The plaintiff presented the paper to George M. Griffith, who refused to sign it, pretending that adjudication of the corporation as a bankrupt would reflect on him in the community. Griffith then reverting to the alleged charge of arson against the plaintiff, warned him to secure the creditors of the company as the only way of escaping immediate prosecution. At this the plaintiff finally was induced to consent, and Griffith notified Peters that the plaintiff had agreed to secure the creditors named in the deed of trust. After Griffith had informed Peters, the plaintiff told the defendant, John L. Rowan, another attorney of Charleston, representing some of the creditors, that he would execute a deed of trust to secure them. Attorneys for the creditors then prepared the trust deed, naming John L. Rowan as trustee. After signing it and the notes in the office of Rowan, plaintiff took the deed for the purpose of having it executed by his wife. The paper not having been promptly returned, Rowan became uneasy, fearing that the corporation would be placed in bankruptcy. The plaintiff's wife, however, finally executed the instrument upon the representation of George M. Griffith that the creditors were "pushing the Fire Marshal", and that the only way for plaintiff to escape prosecution was to secure the payment of their claims.

That the plaintiff was induced to assume the payment of the corporation's debts, aggregating $13,638.00, without adequate, if any, consideration, under duress practiced upon him by George M. Griffith, is not seriously questioned.

The controlling issue, therefore, is whether or not the creditors, seeking to retain the fruits of an unlawful scheme are charged with notice of the transaction. Several attorneys representing claims against the corporation testify, denying knowledge of the duress, but none of the creditors testify, or introduce either Griffith or Crawford. In view of the enmity of Griffith against Rodes during the pendency of the suit, and Griffith's apparent friendliness toward the creditors, it was not encumbent upon the plaintiff to introduce as witnesses Griffith or Crawford, who was evidently a co-conspirator with Griffith in consummating the plot for the benefit of the creditors. Considering these circumstances, and the facts that the creditors were the only parties who would be interested in instituting an unfounded prosecution for the purpose of compelling payment by Rodes of their claims against the corporation, and that the prosecution languished after the execution of the notes and deed of trust, some explanation should have been offered by them. The attorneys testifying, being men of reputable character and standing in their profession, naturally would not have been consulted with reference to such method of enforcing payment, and their evidence is, therefore, of little significance, except as a recognition by the creditors of the necessity for an explanation. The claim by the creditors that Rodes received and appropriated to his own use, as a result of his agreement to assume the obligations of the corporation, a material part of its assets is without foundation in fact.

Whether or not it is ordinarily incumbent upon a third party claiming the fruits of duress to show that he did not know of the wrong until after the accomplishment of its purpose, the facts and circumstances in this case unexplained prima facie impute notice to the defendant creditors.

The decree of the Court of Common Pleas of Kanawha county dismissing plaintiff's bill will therefore be reversed and, proceeding to enter such decree as the lower court should have entered, this Court will enter a decree cancelling and setting aside said notes and deed of trust in accordance with the prayer of the bill.          *Reversed and entered.*