FLORENCE STANFORD, PLAINTIFF-RESPONDENT, v.
CHARLES ZEMEL, DEFENDANT-APPELLANT.

Argued May 3, 1933—Decided January 20, 1934.

Before Brogan, Chief Justice, and Justices Trenchard and Heher.

For the appellant, *Maurice J. McKeown.*

For the respondent, *David Roskein (John A. Laird,* of counsel).

Per Curiam.

This is an appeal from a judgment in favor of plaintiff in an action to recover damages sustained, it is said, as a result of the negligence of defendant.

Appellant urges (1) that there was error in the trial judge's denial of a motion to direct a verdict in his favor, on the ground that respondent had duly released the cause of action pleaded; (2) that there was error in the charge respecting the defense that plaintiff, by release under seal, had released the alleged cause of action, and (3) that there was error in the refusal to charge two requests submitted by appellant.

We are of opinion that there was no error in the denial of the motion for a direction of a verdict. It was respondent's claim that at the time of the execution of the alleged release, she was in a semi-comatose state, and incapable of executing it. She testified that she was not conscious of having executed the release, by a mark or otherwise. There was evidence to sustain this claim. The release was executed at her home, in the presence of a representative of appellant's insurer. She was then confined to her bed, and was "tilted to the side slightly, to her right," so that she could make her mark, although, concededly, she was, under normal conditions, capable of, and accustomed to, signing documents by writing her name. The insurer's representative testified: "If I recall, her hand was not guided; I believe she made it [her mark] of her own physical effort." He was unable to form any opinion as to her mentality. She was taken to a hospital the

next day, and a physician who examined her there testified that she was "semi-conscious," and unable to give "the history herself of anything." He expressed the opinion that on the prior day, she was unable "to appreciate and understand what was going on about her." Another physician, who examined her at the hospital on the day of her admission, said that she was "practically semi-comatose; moribund extremis." On the following day she was given a blood transfusion, and in reply to a question as to her general condition while she was under his care, this physician said: "The patient's condition remained practically the same during the entire time. She was disoriented, irrational, her whole sensorium was very, very hazy."

The consideration for the release was the sum of $400, of which $200 was retained by an attorney who acted for respondent at the time, although she testified that she had not authorized him to represent her. There was evidence that the balance of the consideration was placed in the care of a nurse, who delivered it to respondent at the time of, or shortly after, her departure from the hospital. She retained this money, although she testified that she did not know its source, or the purpose of the payment, until she returnd home when her father advised her that it was paid in settlement of her claim for damages.

Appellant insists that it became respondent's duty, when she recovered her mental faculties, to return, or offer to return, the money so paid, and that her failure to do so "constituted a complete ratification [of the contract] so as to make said release a complete bar, as a matter of law, to the maintenance of the present action." We cannot accede to this proposition. The question has been determined adversely to appellant in this court. The test is whether the document was intelligently signed, but fraudulently procured in relation to extraneous facts, or one to which there has been no lawful assent, and is not, therefore, the alleged maker's deed. *Burik* v. *Dundee Woolen Co.*, 66 *N. J. L.* 420; 49 *Atl. Rep.* 442. In the last cited case, Mr. Justice Collins said: "It is urged that because the plaintiff did not tender reimbursement of the $69.80, he should not be heard to attack the release. If he

were seeking to disavow for fraud a paper intelligently signed, this would be so, but the legal effect of the verdict is that the release is not his deed, and that * * * not fraudulent procurement * * * should have been the replication to the plea." Where, instead of attacking the contract for fraud, the party merely attacks a writing which purports to embody the contract, on the ground that it is not his act and deed, as where his signature was appended thereto without knowledge of its contents and under the belief that he was signing another instrument, he neither admits that the contract was made nor seeks to rescind it and need not restore the consideration received. *Butler* v. *Richmond, &c., Railroad Co.,* 88 *Ga.* 594, 598; 15 *S. E. Rep.* 668; 1 *C. J.* 572.

In the instant case, if respondent's testimony be believed, she did not consciously sign the release. She did not give lawful assent thereto, and it was not her deed. The testimony presented a jury question on this phase of the case, and the motion to direct a verdict was therefore properly denied.

Appellant next criticises the passage in the charge in which the jury was instructed that "if there was a fraud practiced on the plaintiff, if she was deceived into making her cross, or if she did not make her cross, even though she may have retained some money that came to her, it was not her act and it is not binding on her." The ground of objection presented to the trial judge was that there was no evidence that "any fraud was practiced on the plaintiff, either by the defendant, Charles Zemel, or by the insurance company, or by anyone in behalf of the defendant." At the time of the alleged execution of the release, there were present, at the bedside of respondent, the insurer's representative and one who claimed to represent respondent. If either of the persons in attendance knew that, because of her mental condition, respondent was incapable of understanding the transaction, and of executing the release, a fraud was undoubtedly practiced upon her. It was fairly inferable from the testimony presented by the plaintiff, if believed, that one or both of those in attendance knew that she was mentally incapable of giving assent to the release. This attack upon the charge is therefore without merit.

Lastly it is urged that the trial judge erroneously refused to charge the jury (1) that if the plaintiff did not understand what she was doing when she signed the release, but that she, subsequently, upon regaining her mental faculties, realized that she and her attorney had received $400 in settlement of her claim against the defendant, $200 each, she was under a duty to return, within a reasonable time, the money that she received, if she did not wish to be bound by her release, and that if she did not attempt to or offer to return the $200 to the defendant, her conduct constituted a ratification of the release; and (2) that in determining the question whether plaintiff ratified the release, the jury must take into consideration the amount of money received, and if the jury should find, as a fact, that plaintiff, at the time she signed the release, was unaware of its contents, there should be a finding for the defendant, if the plaintiff, upon regaining her mental faculties, did not return the money within a reasonable time, but chose to retain it.

The questions raised by these requests have been determined adversely to appellant, in passing upon the propriety of the trial judge's denial of the motion to direct a verdict. They were properly refused.

Judgment affirmed, with costs.