E. H. CARROLL, *Admr. v.* HAROLD FETTY

(No. 8831)

Submitted February 7, 1939. Decided March 23, 1939.

*Rummel, Blagg & Stone,* for plaintiff in error.
*Lillian S. Robertson* and *J. Blackburn Watts,* for defendant in error.

RILEY, JUDGE:

Harold Fetty prosecutes error to a judgment of the circuit court of Kanawha County affirming the action of the court of common pleas in entering judgment on a jury verdict against him in an action of trespass on the case for wrongful death, wherein E. H. Carroll, administrator of the estate of Mildred Ruth Carroll, deceased, was plaintiff, and Fetty was defendant.

On Friday, January 13, 1936, the decedent, a little girl of six years of age, was seriously injured by an automobile driven by defendant and died early the next morning. On Sunday afternoon following, the father of the decedent was met with the problem of securing money with which to satisfy the undertaker prior to surrender of the body. That evening, the parents, E. H. Carroll and Ida Carroll, signed a certain paper, and were paid $800.00 by the insurance adjuster. Some months later the father was appointed and qualified as administrator, and the present action was thereupon instituted.

On the trial, the defense was confined solely to the theory set up in special plea that plaintiff's claim had been settled and a valid release signed by the child's parents. To defendant's plea of release, plaintiff filed a replication alleging that the release was obtained by fraud and misrepresentation in that the releasors accepted the $800.00 with the understanding that said sum was for funeral expenses and not in full settlement; that on the afternoon prior to the signing of the release, the undertaker refused to surrender the child's body for burial until payment had been made or security given for the cost; that the mother, Ida Carroll, was prostrated with grief over the loss of her child and under the influence of an opiate; that plaintiff could not disclose to his wife the fact of the undertaker's refusal to release the body, and that the "parents were in great need of financial assistance as the defendant and his said agent well knew."

The controlling question presented on this writ of error is the effect of the claimed settlement and release.

It should be noted that in a suit to enjoin the present action at law, this Court, in passing upon the sufficiency of Fetty's bill of complaint, held, in effect, that a valid release signed by the deceased child's parents is a bar to recovery. *Fetty* v. *Carroll,* 118 W. Va. 401, 190 S. E. 683, is the law of this case on this point.

The record contains much conflict on the question whether the release was executed by the Carrolls with knowledge that it was in full settlement. Of course, defendant claims that the release was executed with such knowledge. Reliance is had upon the express terms of the release itself; upon a statement on the face of the drafts given in attempted settlement providing that "The indorsement of this draft constitutes a clear release and in full settlement of the above claim or account"; and a statement indorsed on each draft that "The indorsement of this draft by the payee constitutes a clear release and receipt in full of the claim or account shown on the other side." Defendant's statement of full settlement is supported by the testimony of Dwight Haddox, the insurance adjuster who took the release, J. G. White, the undertaker, and J. F. Owens, and Vinson Long, who were present at the time the release was executed. On the contrary, Carroll denies any intention of making full settlement and he is supported by two witnesses who were present at the time the release was executed and testified that they did not hear any statement to the effect that the paper constituted a complete release. Robert Lyons testified that on the day the child died he heard Carroll tell two men they could make "any kind of arrangement they wanted to make but no settlement of no kind"; Lum Adams said that he heard Haddox state to Mr. Carroll that "he was giving him a part payment"; and Orville Vinion testified that he overheard a conversation between Haddox and Carroll in which the latter asked: "Do you mean this is going to be a settlement?" and the former answered: "No, I will see you after the burial is over with."

It thus appears that on the question as to whether or not the payment constituted full settlement, the oral testimony conflicts. The evidence, however, to overcome the clear and explicit terms of an express release must be strong and convincing. 53 C. J. 1284-1286, and cases cited under note 50. And where such evidence is produced, the question is one for the jury. *Norvell* v. *Kanawha & M. Ry. Co.*, 67 W. Va. 467, 68 S. E. 288, 29 L. R. A. (N. S.) 325. Here, however, the father, though ignorant and inexperienced, was in full possession of his mental faculties, and the fact that the mother was under the influence of an opiate is immaterial, because, in order to bar recovery, she was not even a necessary party to the release. *Swope, Admr.* v. *Keystone Coal and Coke Co.*, 78 W. Va. 517, 89 S. E. 284, L. R. A. 1917 A, 1128. The evidence rather strongly predominates against the disability of Mr. Carroll to realize that he in fact was signing a complete release.

From a careful review of this record, we cannot say that the release is vulnerable because of misrepresentation that the payment was only for a partial amount.

However, another vitiating element enters into the procurement of this release. The evidence clearly shows that the undertaker had refused to give up the child's body for burial until he was paid or payment secured; that Carroll was not financially able to provide for burial and that he made a fruitless effort to have defendant's father sign his note. The insurance adjuster himself knew of these unfortunate and appalling circumstances. In fact, he testified that after an approximate settlement was reached, he told "Mr. White that this settlement was indicated and he saw no reason that the body couldn't be moved * * * ." Undoubtedly, due to the tragic death of their little daughter, the parents were grief-stricken. Naturally, their grief bore heavily upon their minds. While grief may destroy judgment and will, it alone is not sufficient to ground an attack on the release. See generally, 2 Black, Rescission and Cancellation (2d Ed.), sec. 270. Neither are a releasor's necessitous circumstances

alone sufficient to invalidate a release. 12 C. J. 348; 1 Black, Rescission and Cancellation (2d Ed.), sec. 230. They, however, furnish a background which rendered more acute the situation of duress in which the parents found themselves when the undertaker refused to give up the child's body, because they were unable to acquire sufficient funds to satisfy his demand. Duress sufficient to suspend the will exercised by a party to a release is sufficient to destroy its legal effect. 12 C. J. 347; 11 Am. Jur., Compromise and Settlement, sec. 29; 1 Black, Rescission and Cancellation (2d Ed.), chap. 13. What greater pressure could have been on these parents impelling them to sign the paper is quite difficult to imagine. Here are grief-stricken parents, an ill and distracted mother, and a lack of funds to bury a child whose body, under nature's dealings with all things mortal, required a prompt and decent burial. And where, as in the instant case, a releasee knows of the duress, brought about, it is true, by a third party, and nevertheless takes advantage of it in causing the release to be executed, the release may be set aside, provided the duress was sufficient to subvert the will of the parties. Thus it has been held that "duress may be asserted against a third party claiming the fruits thereof, where the circumstances impute to him notice of the wrong prior to the accomplishment of its purpose." Syllabus, *Rodes* v. *Griffith, Rodes & Company*, 102 W. Va. 79, 135 S. E. 244. See generally, 17 Am. Jur. 895; Editorial Notes to *Smith* v. *Commercial Bank*, 77 Fla. 163, 81 So. 154, 4 A. L. R. 862, 864-871; and *Randolph Company* v. *Lewis*, 196 N. C. 51, 144 S. E. 545, 62 A. L. R. 1474, 1477-1483. Of course, the duress must be shown by clear and convincing evidence. 3 Black, Rescission and Cancellation (2d Ed.), sec. 682. Whether duress exists in a particular transaction presents a question of fact for the jury. *Bank of Clinchburg* v. *Carter*, 101 W. Va. 669, 133 S. E. 370; 1 Black, Rescission and Cancellation (2d Ed.), sec. 221, note 18. What constitutes duress depends upon the facts of the particular case. *Barnett Oil & Gas Co.* v. *New Martinsville Oil Co.* (W. Va.), 254 Fed. 481, 487.

Here we simply say the jury was entitled to find this release was procured by duress. In so holding, we do not wish to impair the obligation of releases made in good faith and of free will. Nor do we condemn the commendable practice of prompt settlements by tort-feasors. This record, however, contains a state of facts seldom encountered in the settlement of tort liability. It does, however, present a reification of the perils which at times attend persistent and zealous efforts to settle claims with parties on a greatly unequal basis. Where an adjuster seeks to make an adjustment he does so at the risk which the particular situation offers.

In this State, fraud, both in its execution and procurement may be pleaded at law. *Workman v. Continental Casualty Co.*, 115 W. Va. 255, 175 S. E. 63; *Norvell v. Kanawha & M. R. Co., supra. A fortiori,* duress may be pleaded at law. See generally, *Bolyard v. Bolyard,* 79 W. Va. 554, 91 S. E. 529, L. R. A. 1917D, 440. *Janney v. Virginian Railway Company,* 119 W. Va. 249, 193 S. E. 187, distinguished: This case decides simply that in the absence of fraud, a release may not be attacked at law on the ground of mistake.

Defendant's counsel rely upon Carroll's purchase of an automobile as effecting ratification. Having taken the child's body to Kentucky and buried it, and purchased a marker, what the Carrolls did with the balance of the money is unimportant. At most, ratification is a question for the jury. 23 R. C. L., subject Release, sec. 49. Should it be decided that plaintiff has complied with the requirements as to tender of the settlement money, its intervening use is of little moment.

Defendant's counsel further assert that no attack can be made upon the release because no proper tender was made of the money received in settlement. Reliance is had upon a number of authorities in support of this position, including *McCary v. Monongahela Valley Traction Company,* 97 W. Va. 306, 125 S. E. 92; *Hart v. The Kanawha Oil Company,* 79 W. Va 161, 90 S. E. 604; *Towles & Co. v. Carpenter, Wright & Co.,* 62 W. Va. 151, 57 S. E.

365; *Shank* v. *Groff*, 45 W. Va. 543, 32 S. E. 248. Plaintiff's counsel counter that no tender was required and at most the tender made at the close of plaintiff's evidence was in time. The authorities on the necessity of tender, we find, are in hopeless conflict. There is, however, a distinction between the legal effect of fraud or duress in the procurement or treaty of a release or contract and fraud or duress in its execution or factum. See *Stanford* v. *Zemel*, 12 N. J. Misc. 133, 170 A. 53. In the latter case, it is void, and, there being no release, there is nothing to rescind and therefore tender is not required. In the former, the release or contract is merely voidable, and tender is required. *McCary* v. *Monongahela Valley Traction Co.*, *supra*, at page 309 of 97 W. Va.; *Rau* v. *Robertson* (Mo. Supp.), 260 S. W. 751; *Martin* v. *Sentker*, 12 Ohio App. 46. Generally, a release obtained by duress is voidable. 2 Black, Rescission and Cancellation (2d Ed.), sec. 382, note 16, and cases cited; 1 Id., sec. 225. This, perhaps, is by analogy to the rule sustained by many cases that a contract obtained by duress is voidable. A few cases are representative. *Carter* v. *Couch*, 84 Fed. 735, 28 C. C. A. 520; *Clement* v. *Buckley Mercantile Co.*, 172 Mich. 243, 137 N. W. 657; *Doolittle & Chamberlain* v. *McCullough*, 7 Ohio St. 299; *Barnette* v. *Wells Fargo Nevada National Bank*, 270 U. S. 438, 46 Sup. Ct. 326, 70 L. Ed. 669. Thus it would seem that the instant release was actually executed by the releasors, but its execution having been procured by duress, tender is a condition precedent to a successful attack on it. *McCary* v. *Monongahela Valley Traction Co.*, *supra*.

It would be indeed unprofitable for us to attempt to reconcile these cases. Of course, where a tender is required, the duty does not arise until the invalidity of the release is discovered by the releasor. 53 C. J., Release, sec. 52, note 85; 34 Cyc. Law and Pro. 1072, note 3. It has been held by many courts that tender of the amount received in settlement is a condition precedent to the institution of the action. A few will suffice. *Patterson* v. *Cincinnati, N. O. & T. P. Ry. Co.*, 5 Fed. Supp. 595; *Thornton* v. *Puget Sound Power & Light Co.*, 49 Fed. (2d) 347.

Other courts have decided that in an action for unliquidated damages, tender of the amount received in settlement may be dispensed with where it cannot be restored and the jury is instructed to deduct the sum paid from the amount of the verdict. 23 Ruling Case Law, 414, note 16. The better rule, however, it seems to us, is that tender need not be made until attack is made upon the release when, as in the instant case, the replication is filed to the plea of release. 53 C. J., Release, sec. 52, notes 91, 92, 93, 94; 34 Cyc. Law and Pro. 1072, note 7; *Glover* v. *Louisville & N. R. Co.*, 163 Tenn. 85, 40 S. W. (2d) 1031; *Devoe* v. *Best Motor Co.*, 27 Ga. App. 619, 109 S. E. 689; Editorial Note, *Pattison* v. *Seattle, R. & S. R. Co.*, 64 Wash. 370, 116 Pac. 1089; 35 L. R. A. (N. S.) 660, 664; *Rockwell* v. *Capital Traction Co.*, 25 App. D. C. 98, 4 Ann. Cas. 648; *Memphis St. R. Co.* v. *Giardino*, 116 Tenn. 368, 92 S. W. 855, 8 A. & E. Ann. Cas. 176. In *McCary* v. *Traction Co.*, *supra*, plaintiff's second replication to a plea of release was held defective because it did not allege a tender of the amount received in settlement. This case, however, does not decide that a tender of the sum received under a release must be made prior to the filing of the replication to the plea of release. In fact, we have found no West Virginia case holding contra to what we regard as the sound rule.

Here, we have an anomalous situation, but the anomaly inures to plaintiff's benefit. The instant case presents a procedural question not appearing in any of the cases cited by counsel or of which we have knowledge. The special plea setting up the release was filed immediately before the jury was impaneled with the understanding, so the trial court noted in the record, that the plaintiff should have the right to file a replication thereto. At the close of the plaintiff's evidence, plaintiff offered for filing a replication reciting an offer to refund the settlement money. Defendant objected to the replication because there was no actual tender. Thereupon, and after a short recess, plaintiff's counsel tendered to defendant's coun-

sel in American currency the amount of the attempted settlement. This tender was refused, and upon motion, the plaintiff was permitted to amend the replication by reciting the fact of the tender. Here, the agreement between counsel provided for the filing of the replication after the commencement of the trial.. Counsel naturally contemplated, or at least should have done so, that a tender was necessary to avoid the release. It follows that it is reasonable to say that counsel intended that plaintiff should have the right to make tender after the trial had begun. We are of opinion that under the facts of the instant record, the tender was made with sufficient promptness.

The giving of plaintiff's instructions Nos. 3 and 5 is assigned as error. The first of these instructions simply informed the jury that if they find for the plaintiff they shall "award to the plaintiff such damages as they may deem just and fair from all the evidence, not exceeding the sum of $9,152.00." Thus the jury was told that the verdict should not exceed the statutory limit of $10,000.00, less the amount paid under the release. Instruction No. 5 advised the jury that if they found for the plaintiff, they should deduct from the amount of damages ascertained the amount of the settlement paid, and *return a verdict for the balance if any.* These instructions are without prejudice. Clearly, they do not assume, as suggested in defendant's "Bill of Exceptions No. 3", that the verdict in no event should be less than $848.00.

Another assignment of error is to the effect that the court erred in answering the question propounded by the jury, whether or not the plaintiff, in his testimony, had said to the insurance adjuster at any time that he would accept $2,500.00 in settlement of the claim without reference to plaintiff's failure to controvert testimony of other witnesses that plaintiff had made such offer. Suffice to say the court's answer was as broad as the question would justify; it was in accord with the record, and not misleading.

The record is free from prejudicial error. Therefore, the judgment of the Circuit Court in affirming the judgment of the Common Pleas Court is affirmed.

*Affirmed.*

Fox, PRESIDENT, dissenting:

I am unable to concur in the opinion of the majority in this case.

Under our present economic and judicial system, two propositions seem fully established: (1) In the absence of fraud, duress, or some provision rendering it invalid on grounds of public policy, a contract entered into by parties competent to make an agreement is binding upon all parties thereto; and (2) a contract not contrary to some rule of public policy, may, when its terms are understood, be affirmed and ratified, even though the same, in the first instance, might have been repudiated.

Here, as I view the case, we have a written agreement signed by parties capable of entering into the same and at a time when they had complete understanding of its terms; and whatever may be said in favor of a misunderstanding at that time fails because of the subsequent ratification of the release when there can be no question that its full import was understood by the parties who now seek to repudiate the same.

We have the majority opinion which holds, in effect, that Carroll knew he was signing a complete release, and that there was no representation that the payment made was partial only; and which makes no attempt to explain the subsequent ratification of the release. Of course, the purchase of the automobile is unimportant. It was the collection and use for any purpose of the check of $552.15 that operated as a ratification.

But it is said that duress was exercised in procuring the execution of the contract and that this original vice outweighs every other consideration and renders the agreement unenforceable, notwithstanding the subsequent conduct of the parties in ratifying the same.

When we analyze the charge of duress, we find that

its alleged existence lies in the fact that a funeral director was refusing to release for burial the body of the plaintiff's child, unless a sum of money was paid or secured; and the defendant is charged with participation in or taking advantage of this indefensible conduct. There is no evidence of this participation unless it be that, at the time the agreement of settlement was made and the release executed, the defendant may have known and probably did know that the funeral director had demanded payment of or security for his charge before the body of the child would be released. Up to this time, as shown by undisputed evidence, the defendant understood that the funeral had been arranged for and that the matter of settlement had been postponed until after the funeral. While the defendant, through the insurance adjuster, Haddox, may have been overzealous in seeking a settlement at one stage of the negotiations, it clearly appears that the final steps leading to the settlement were initiated by Carroll, the father of the child and the defendant merely responded to his request to further negotiate, and at a time when it does not appear, unless by inference, that he had any knowledge of the demands of the funeral director, had had no communication with him and was not even acquainted with him. I do not believe the evidence, or any reasonable inference therefrom, furnishes sufficient basis for the holding that the defendant participated in or is chargeable with the alleged duress on the part of the funeral director. The majority opinion says that the evidence necessary to overcome the release must be clear and convincing.

The mandate of this Court is final and conclusive on all matters coming before it, except such as may involve some phase of the federal constitution or statutes enacted thereunder. Power such as this carries with it responsibilities and the greater the power, the greater the responsibility. Subject only to self-imposed restraint, this Court may infer what it chooses from any state of facts. If, through inferences arising from a situation such as

that developed in this case, we waive aside as inapplicable the well established principles above referred to, we can do so, without direct proof, in any case where it is felt that there has been improper or oppressive conduct, unhampered by rules of law which the wisdom of the centuries has shown to be necessary in the affairs of man.

I would reverse the judgment of the court below, set aside the verdict and remand the case for a new trial. Judge Hatcher joins in this dissent.