**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CHARLES J. ADAMS; DAVID N.
BOSLEY; MARK J. CERULLO; DELORES
A. HEAVNER; MONA JANE MACKEY;
BRIAN L. MCCORD; GERALD R.
MOORE; JOHN B. MOORE; REBECCA
A. MOORE; DAVID J. PERRY; JANET
L. QUEEN; ROBERT W. SIMS; NANCY
STREETS; CHARLES B. WILFONG,
Plaintiffs-Appellants,

and                                                           No. 99-2168

LEAHBELLE COGAR,
Plaintiff,

v.

MOORE BUSINESS FORMS,
INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of West Virginia, at Elkins.
Robert Earl Maxwell, Senior District Judge.
(CA-96-103-2)

Argued: June 6, 2000

Decided: August 24, 2000

Before NIEMEYER and WILLIAMS, Circuit Judges, and Robert
R. BEEZER, Senior Circuit Judge of the United States Court of
Appeals for the Ninth Circuit, sitting by designation.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Williams and Senior Judge Beezer joined.

_____

**COUNSEL**

**ARGUED:** Charles F. Donnelly, DONNELLY & CARBONE, P.L.L.C., Charleston, West Virginia, for Appellants. Robert Patrick Heary, COHEN, SWADOS, WRIGHT, HANIFIN, BRADFORD & BRETT, L.L.P., Buffalo, New York, for Appellee. **ON BRIEF:** Mark Wesley Carbone, DONNELLY & CARBONE, P.L.L.C., Charleston, West Virginia, for Appellants. Laurence B. Oppenheimer, COHEN, SWADOS, WRIGHT, HANIFIN, BRADFORD & BRETT, L.L.P., Buffalo, New York, Robert M. Steptoe, Jr., Michael J. Florio, STEPTOE & JOHNSON, Clarksburg, West Virginia, for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

In connection with its closing of a manufacturing plant in Buckhannon, West Virginia, Moore Business Forms, Inc. offered employees who were to lose their jobs a severance and benefits package in exchange for releases of claims that they might have in connection with their employment or the plant's closing. After signing the releases and receiving cash benefits ranging from approximately $3,500 to $30,000 each, as well as noncash benefits, 14 employees now claim that the releases they signed are void due to the releases' failure to conform with both federal statutory requirements for a release of claims under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., and state regulations implementing the West Virginia Human Rights Act, W. Va. Code § 5-11-1 et seq.

These 14 employees filed this action to pursue claims against Moore for age discrimination, breach of contract, misrepresentation, wrongful discharge, and unlawful discharge. The district court entered summary judgment against the employees, finding that the releases

2

they signed complied with the relevant federal and state requirements and constituted valid waivers of all of the employees' claims. We affirm.

I

On July 28, 1994, Moore Business Forms, Inc. ("Moore"), a manufacturer of business forms, notified the more than 190 employees at its Buckhannon plant that Moore would be closing the facility. Moore offered the employees a severance support program that would provide the employees with benefits of one week of pay for each completed year of service up to 10 years, two weeks of pay for each year of service in excess of 10 years, continued health and life insurance, job placement services, and continued access to Moore's "employee assistance program." To obtain these benefits, an employee was required to sign an agreement purporting to release Moore from any claim related to the employee's employment or loss of employment. The agreement states:

> In consideration of Your receipt of the payments and benefits described above, You hereby release, and agree not to sue, the Company . . . with respect to any claim, whether known or unknown, which You have, or may have, related to Your employment with the Company or termination of such employment (the "Claims"), including all Claims of unlawful discrimination on account of sex, race, age, disability, veteran's status, national origin or religion; all Claims based upon any federal, state or local equal employment opportunity law, including the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, as amended by the Older Workers Benefit Protection Act, Executive Order 11246, the Rehabilitation Act of 1973, as amended, the Equal Pay Act of 1973, the Vietnam Era Veteran Readjustment Assistance Act of 1974, the Drug-Free Workplace Act of 1988, the Americans With Disabilities Act of 1990, and the Civil Rights Act of 1991; all Claims under the Worker Adjustment and Retraining Notification Act, and any state or local plant closing statute; all Claims for violation of any agreement or representation, express or implied, made prior to or simultaneously with

3

> this Agreement; and all Claims based upon wrongful termi-
> nation of employment and similar or related Claims.

Fourteen employees who had signed releases and received benefits and one who had not signed a release filed suit against Moore on July 17, 1996, in the Circuit Court of Upshur County, West Virginia, and Moore removed the action to federal court. In their amended complaint, the employees alleged age discrimination, breach of contract, misrepresentation, wrongful discharge, and unlawful discharge arising out of the closing of the Buckhannon plant. Neither before suit nor in bringing suit did the 14 employees who received benefits in exchange for executing the releases tender back to Moore the benefits they had received.

On Moore's motion for summary judgment, the district court dismissed the age-discrimination claims of four employees because they were under 40 years old, and it dismissed the age-discrimination, misrepresentation, and wrongful-discharge claims of two other employees because they were barred by the statute of limitations. After permitting limited discovery on the remaining claims and receiving briefing on the issue of whether the releases were supported by consideration (i.e., benefits to which the employees would otherwise not have been entitled), the court granted Moore's motion for summary judgment with respect to all claims of those employees who had signed releases, finding that they had validly waived their right to bring the claims. The district court dismissed the claim of the one employee who had not signed the release after she and Moore reached a settlement. This appeal followed.

The appealing employees (hereinafter "the Employees"), all of whom signed releases, contend that they did not waive their right to bring age-discrimination claims because the releases they signed did not comply with either the statutory requirements for a release of claims under the ADEA, 29 U.S.C. § 621 et seq., or the West Virginia Human Rights Commission's requirements for the waiver of claims under the West Virginia Human Rights Act, W. Va. Code § 5-11-1 et seq. The Employees argue also that, because the releases did not comply with federal and state requirements for waiver of age-discrimination claims, they are void and therefore also ineffective as

4

waivers of their common-law claims for breach of contract, misrepresentation, wrongful discharge, and unlawful discharge.

II

The Employees contend first that the releases they gave do not comply with federal statutory requirements for waiver of ADEA claims. The ADEA, as amended by the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f), furnishes specific requirements for a release of claims under the ADEA. As the Supreme Court has stated, "The policy of the OWBPA is . . . clear from its title: It is designed to protect the rights and benefits of older workers . . . . The OWBPA implements Congress' policy via a strict, unqualified statutory stricture on waivers . . . ." Oubre v. Entergy Operations, Inc., 522 U.S. 422, 427 (1998). In Oubre, the Court rejected the suggestion that an "employee's mere retention of moneys [could] amount to a ratification" of a release that would otherwise be invalid because of its failure to comply with the OWBPA's requirements. Id. at 428. Oubre thus overruled Blistein v. St. John's College, 74 F.3d 1459 (4th Cir. 1996), insofar as Blistein held that an employee could relinquish the right to bring an ADEA claim by accepting benefits offered in exchange for a release that failed to comply with the OWBPA's waiver requirements.* See id. at 1466.

_____

*The Supreme Court in Oubre left open the issue of whether an employee who brings an ADEA claim after receiving consideration for signing a purported release of such a claim may either forfeit his right to ongoing reciprocal benefits from the employer or be required to pay restitution to the employer. See Oubre, 432 U.S. at 428; id. at 432-33 (Breyer, J., concurring) (noting that the OWBPA's provisions "are consistent with viewing an invalid release as voidable, rather than void," that "[a]pparently, five or more Justices take this view of the matter," and that "treating the contract as voidable could permit an employer to recover his own reciprocal payment (or to avoid his reciprocal promise) where doing so seems most fair, namely, where that recovery would not bar the worker from bringing suit"). To the extent that this court's decision in Blistein is consistent with Justice Breyer's observations about the Court's holding in Oubre, therefore, it remains good law. See Blistein, 74 F.3d at 1466 (concluding that a release that is invalid under the OWBPA is voidable, not void, and finding no evidence that Congress intended for employees "to have it `both ways,'" that is, to retain the benefits paid by an employer to secure a release of an ADEA claim and yet to bring such a claim).

5

The OWBPA provides that "[a]n individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary," and "a waiver may not be considered knowing and voluntary unless at a minimum" it satisfies certain enumerated requirements. 29 U.S.C. § 626(f)(1). The Employees do not dispute in this appeal that the agreements they signed satisfy almost all of the OWBPA's enumerated requirements: they are written in a manner calculated to be understood, see id. § 626(f)(1)(A); they specifically refer to claims arising under the ADEA, see id . § 626(f)(1)(B); they do not purport to waive claims arising after the date of their execution; see id. § 626(f)(1)(C); they are supported by consideration, see id. § 626(f)(1)(D); they include written advice to consult with an attorney prior to executing them, see id.§ 626(f)(1)(E); they provide the Employees 45 days to consider the agreements, see id. § 626(f)(1)(ii); and they provide the Employees seven days in which to revoke the agreements after signing them, see id. § 626(f)(1)(G).

The Employees stake their position that the releases are invalid on the argument that the releases failed to conform with the OWBPA's informational requirements. The OWBPA requires that an employee terminated as part of an "employment termination program" be provided information as to "any class, unit, or group of individuals covered by [the employment termination] program .. . and the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program." 29 U.S.C. § 626(f)(1)(H); see also 29 C.F.R. § 1625.22(f)(1)(iii)(A). In requiring employers to provide this information, Congress intended that employees, when deciding whether to waive discrimination claims, have the information necessary to assess the value of the rights that they would be giving up. See Raczak v. Ameritech Corp., 103 F.3d 1257, 1262-63 (6th Cir. 1997); Griffin v. Kraft Gen. Foods, Inc., 62 F.3d 368, 373 (11th Cir. 1995).

The Employees argue that Moore failed to satisfy these informational requirements because "[a]t no time were [the Employees] informed of the ages of those individuals at the other facility [who] would . . . be performing the work that was formerly done at the Buckhannon facility." Although Moore provided the Employees with the job titles and ages of all employees at the Buckhannon plant, the

6

Employees contend that, because Moore may have transferred work from the Buckhannon plant to another facility, the company was required under the OWBPA to give the Employees information concerning the ages and job classifications of workers at any facility to which work was transferred. Moore contends, on the other hand, that the OWBPA merely required it to provide information about employees at the Buckhannon plant.

Thus, the question raised by the Employees' challenge to the releases they signed in this case requires us to determine the scope of the relevant "job classification or organizational unit," as those terms are used in the statute, to determine whether Moore supplied the Employees with the required information. 29 U.S.C.§ 626(f)(1)(H).

The statute does not define "job classification" or "organizational unit," but the EEOC's interpretive regulations state that "the scope of the terms . . . `job classification,' and `organizational unit' is determined by examining the `decisional unit' at issue." 29 C.F.R. § 1625.22(f)(1)(iii)(C). The "decisional unit," in turn, is described as "that portion of the employer's organizational structure from which the employer chose the persons who would be offered consideration for the signing of a waiver and those who would not be offered consideration for the signing of a waiver." 29 C.F.R. § 1625.22(f)(3)(i)(B). The regulations explain that "[t]he term `decisional unit' has been developed to reflect the process by which an employer chose certain employees for a program and ruled out others from that program," id., but they note that "as the decisional unit is typically no broader than the facility, in general the disclosure need be no broader than the facility," 29 C.F.R. § 1625.22(f)(3)(ii)(B). The regulations explain further that "if an employer seeks to terminate employees by exclusively considering a particular portion or subgroup of its operations at a specific facility, then that subgroup or portion of the workforce at that facility will be considered the decisional unit." 29 C.F.R. § 1625.22(f)(3)(ii)(D). And, "if the employer analyzes its operations at several facilities then by the nature of that employer's decision-making process . . . the decisional unit would include all considered facilities." 29 C.F.R.§ 1652.22(f)(3)(ii)(E).

While the decisional unit is thus "typically" confined to the facility at which the terminations occur, it could extend beyond that facility

7

if, for example, the employer actually considered employees at another facility for layoff before selecting the group of employees to whom it would offer the employment termination program. See 29 C.F.R. § 1625.22(f)(3)(ii)(E). Because the purpose of providing employees with information about fellow employees before they sign waivers of discrimination claims is to ensure a "knowing and voluntary" waiver, 29 U.S.C. § 626(f)(1), the employees must be provided with the age and job-title information that would be relevant if the employees were to bring an age discrimination claim arising out of their termination. See, e.g., Allen v. Diebold, Inc., 33 F.3d 674, 678 (6th Cir. 1994) ("[P]laintiffs in a plant closing case must show that an employer's decisions regarding which factories to close or down-size were based on consideration of the ages of the workers at those factories"). This interpretation of 29 U.S.C.§ 626(f)(1)(H)(ii) comports with the EEOC's regulations and serves the purpose of the statutory provision by ensuring that an employee faced with a decision whether to sign a release will be furnished with information necessary to evaluate any potential discrimination claim before deciding to sign the release.

In this case, it is undisputed that Moore supplied the employees at the Buckhannon plant with the job classifications and ages of all employees at the plant. Moore takes the position that its Buckhannon facility was a "stand-alone" facility and that the employees at that plant constituted the relevant "decisional unit." It maintains that the employment decisions concerning the Buckhannon plant were independent of any decisions about other plants.

The Employees have failed to produce any evidence challenging Moore's assertion that, in making the decision to close the Buckhannon plant, Moore did not consider layoffs or plant closings at other locations. One employee did testify about an incentive program instituted by Moore in late 1993 or early 1994, which tied raises at the Buckhannon plant to productivity goals. She testified that the employees were told at that time, "[t]he future of this plant depends on your . . . meeting these [production goals]." She also testified that Moore told the Buckhannon employees that the incentive program was "a competition to see which plants [would] stay open and which plants [would] close." This employee further testified that the Buckhannon plant performed very well in the incentive program but was closed

8

anyway. In addition to this testimony about the incentive program, the Employees testified that Moore transferred certain manufacturing equipment from the closed Buckhannon facility to another plant. The Employees assert that this evidence demonstrates that Moore considered closing other plants in conjunction with its decision to close the Buckhannon facility.

This evidence, however, is only speculative, and any connection between the incentive program and Moore's decision to close the Buckhannon plant is lacking. Moreover, the record contains no evidence suggesting that Moore considered employees at other plants for layoff or considered other plants for closure in conjunction with its decision to close the Buckhannon plant. Moore's interest in "downsizing" is the only reason for closing the Buckhannon plant that is indicated in the record.

In the absence of evidence that Moore considered, as part of its decision to close the Buckhannon plant, other plants or other employees, the district court properly determined that the decisional unit for purposes of applying 29 U.S.C. § 626(f)(1)(H)(ii) was the group of employees at the Buckhannon plant. Accordingly, we affirm the district court's conclusion that the releases signed by the Employees are not invalid by reason of the Employees' having been given information only about their fellow employees at the Buckhannon plant.

III

The Employees also contend that the releases they signed did not comply strictly with the regulations promulgated by the West Virginia Human Rights Commission to govern waiver of claims under the West Virginia Human Rights Act. See W. Va. Code § 5-11-1 et seq.; W. Va. Code State R. tit. 77, § 6-1 et seq .

The West Virginia Human Rights Act makes it unlawful for any covered employer to "deny or limit . . . employment . . . because of . . . age." W. Va. Code § 5-11-9(2). It authorizes the West Virginia Human Rights Commission ("the Commission") to promulgate legislative rules implementing the Commission's powers and authority. See W. Va. Code § 5-11-8(h). Pursuant to this authorization, the Commission promulgated regulations setting forth criteria for waiver

9

and release of an individual's right to pursue a claim before the Commission. See W. Va. Code State R. tit. 77,§§ 6-1 to 6-8. Those regulations, which are "modeled on the provisions governing waiver and release set forth in the [OWBPA]," provide a list of conditions that must be met before a release will be enforced as a knowing and voluntary waiver of a claim under the West Virginia Human Rights Act. W. Va. Code State R. tit. 77, § 6-1.

As is true with respect to the OWBPA waiver requirements, the Employees do not dispute that the release form provided by Moore complied with the lion's share of the waiver requirements laid out in the State regulations. They point to two aspects of the release, however, which were not in strict compliance with the regulations' criteria. First, whereas the regulations specify that a waiver must contain the toll-free number of the state bar association, see W. Va. Code State R. tit. 77, § 6-3.2.3, the release form provided by Moore contains only the statement, initialed by each employee, that "[b]y signing this Agreement and initialing [this] . . . statement[ ], you expressly acknowledge and agree that . . . you have been advised to consult an attorney prior to signing this Agreement." Second, whereas the regulations require that a waiver "specifically refer[ ] to rights or claims arising under the West Virginia Human Rights Act," see W. Va. Code State R. tit. 77, § 6-3.2.2, the release form provided by Moore and signed by the employees only states that the employees "hereby release, and agree not to sue [Moore] . . . with respect to . . . all Claims of unlawful discrimination on account of . . . age . . . [and] all Claims based upon any federal, state or local equal employment opportunity law." (Emphasis added).

We are not persuaded that either of these technical deviations in the releases signed by the Employees amounts to a sufficiently substantive violation of the Commission's regulations to render the releases invalid. The West Virginia regulations clearly intend to have employees consult attorneys before waiving rights, and while Moore's release form did not provide the bar association's telephone number, it specially directed the employee to consult an attorney. Similarly, while the release form did not refer by name to any West Virginia statute, it did refer to state and local age-discrimination and equal-employment-opportunity laws. For these reasons, we conclude that the releases substantially complied with the criteria for a knowing and

10

voluntary waiver of claims under the West Virginia Human Rights Act. See Spradling v. Blackburn, 919 F. Supp. 969, 975 n.13 (S.D. W. Va. 1996) (suggesting that a release of claims under the West Virginia Human Rights Act was enforceable, among other reasons, because it "substantially complie[d] with the regulatory requirements").

Even if we were to find that the release forms were invalid under West Virginia law, the Employees' challenge fails because the Employees did not tender back to Moore the benefits that they received in exchange for signing the releases. West Virginia adheres to the principle that "one who seeks to avoid the effect of a release or compromise of a claim, demand, or cause of action. . . must first return or tender the consideration, whether money or property, paid him in connection with his execution of the settlement or release." Crawford v. Ridgely, 100 S.E.2d 665, 669 (W. Va. 1957); see also Carroll v. Fetty, 2 S.E.2d 521, 524-25 (W. Va. 1939) (noting that a release obtained by duress is voidable, but that"tender is a condition precedent to a successful attack on it").

The Employees argue that the Supreme Court's decision in Oubre v. Entergy Operations, Inc., 522 U.S. 422 (1998), interpreting the waiver provisions of the OWBPA, on which the West Virginia regulations are modeled, forecloses the application of West Virginia's tender-back requirement to claims governed by the state regulations. This argument fails for two reasons. First, Oubre limited its holding to the waiver of claims under the ADEA, expressly excepting other claims. See id. at 428 (limiting holding to OWBPA requirements for waiving ADEA claims and refusing to address the"validity of the [release] as to other claims"). Moreover, as we need not mention, it falls to West Virginia's legislature to pass state laws and to the West Virginia courts to interpret them. The mere fact that a State models its regulations on a federal statute does not cede to the United States Supreme Court the State's authority to interpret its own laws. Cf. Murdock v. City of Memphis, 87 U.S. (20 Wall.) 590, 632-33 (1875).

Second, we are not persuaded that the rationale behind the Oubre decision is applicable to West Virginia's statutory and regulatory regime. Whereas the Supreme Court in Oubre was interpreting an explicit congressional mandate that "[a]n individual may not waive any right or claim under this chapter unless the waiver is knowing and

11

voluntary" and, "at a minimum," complies with the statutorily enumerated list of requirements, 29 U.S.C. § 626(f)(1), our examination of West Virginia's Human Rights Act reveals no similar provision governing waiver of claims under that Act, see W. Va. Code § 5-11-1 et seq. The technical requirements relied upon by the Employees are to be found not in the statute, but in the West Virginia Human Rights Commission's regulations, which explicitly note their limited applicability as "criteria for regulating the voluntary release or waiver of an individual's right to pursue a claim before the West Virginia Human Rights Commission." W. Va. Code State R. tit. 77, § 6-1.1 (emphasis added). We find no indication that these regulations would be construed to foreclose application of the State's common-law tender-back rule to actions in court challenging the validity of releases of claims under the State's Human Rights Act. See Spradling, 919 F. Supp. at 975 n.13 ("The regulations, by their own terms, do not have any effect on the validity of a waiver when a plaintiff gets to file suit in the first instance in a West Virginia circuit court").

IV

Because we have concluded that the releases signed by the Employees complied with the OWBPA and with the regulations of the West Virginia Human Rights Commission and that the Employees cannot pursue their state discrimination claims without tendering back benefits, we need not address the Employees' argument that the releases' failure to conform with those requirements renders them void as to all other claims purportedly waived, an argument that would likely fail anyway. See Blistein v. St. John's College, 74 F.3d 1459, 1466 (4th Cir. 1996) ("[A]n employee who unknowingly and involuntarily enters into a retirement agreement, as those terms are defined by OWBPA, has a voidable, not a void, contract"); see also Oubre v. Entergy Operations, Inc., 522 U.S. 422, 428 (1998) (limiting holding to statutory compliance with OWBPA for purposes of ADEA claims and refusing to address the "validity of the [release] as to other claims"). And the Employees have not argued that the releases are invalid on any other grounds, for example, under West Virginia's common-law standards for duress or fraud. Therefore, because the Employees accepted valuable severance benefits in exchange for their agreements not to sue Moore "with respect to any claim, whether known or unknown . . . related to [their] employment with [Moore],"

12

we conclude that the district court properly granted Moore's motion to dismiss the Employees' common-law claims of breach of contract, misrepresentation, wrongful discharge, and unlawful discharge.

For the foregoing reasons, the judgment of the district court is

<u>AFFIRMED</u>.

13