# CHARLESTON.

## NORVELL v. KANAWHA & MICHIGAN RAILWAY CO.

### Decided May 3, 1910.

1. CARRIERS—*Injury to Passenger on Platform—Negligence.*
   It is negligence in a passenger, under ordinary circumstances,
   to stand upon an open platform of a rapidly moving railroad
   car. If one voluntarily and unnecessarily takes such position
   and is injured in it he cannot recover damages.

2. SAME—*Passenger Riding on Platform—Negligence.*
   To ride on a car platform is not always a negligent act. If the
   train is so crowded that one cannot reasonably enter a car, it is
   not negligent to ride on the platform when the carrier ac-
   quiesces in the use of such accommodations by collecting fare
   for the same or some other indicative act.

3. SAME—*Carriage of Passengers—Duty Towards Passenger Rid-
   ing on Platform.*
   The carrier owes to a passenger unvoluntarily, necessarily
   and rightfully riding on the platform the high degree of care
   commensurate with the circumstances and its act in undertak-
   ing to carry him there.

4. SAME—*Injury to Passenger on Platform—Negligence.*
   Injury to a passenger while excusably riding on the platform
   because of the overcrowding of the train usually constitutes a
   *prima facie* case of negligence on the part of the carrier.

5. SAME—*Carriage of Passengers—Duty Towards Passenger Rid-
   ing on Platform.*
   The liability of the carrier to one excusably riding on the
   platform is not absolute. If it used reasonable diligence to
   provide cars for his safe carriage, and, with fair excuse for fail-
   ing to provide them, exercised the increased care demanded by
   the passenger's enforced position on the platform, it is not liable
   for injury to him.

6. SAME—*Carriage of Passengers—Injury to Passenger on Plat-
   form—Liability of Carrier.*
   If a railroad company negligently and unreasonably fails to

provide sufficient cars so that passengers are compelled to ride on the platforms and then accepts passengers for carriage in such hazardous places, it is liable for damages to one injured therein, unless he has contributed to the injury by negligence on his part.

7. SAME—*Liability of Carrier for Conductor's Acts.*

The conductor of a train represents the railroad company in relation to the transportation of passengers on his train, and his acts in receiving and carrying passengers on the platforms when the train is overcrowded binds the company.

8. TRIAL—*Direction of Verdict.*

The court cannot properly direct a verdict in a case turning on a conflict of evidence which makes the material facts so doubtful that a verdict for either party would be sustained.

9. RELEASE—*Release Executed Through Fraud.*

A written release or acquitance of a claim for personal injury will not sustain a plea of accord and satisfaction in the premises if its execution was obtained by deception and fraud.

Error to Circuit Court, Mason County.

Action by J. C. Norvell against the Kanawha & Michigan Railway Company. Judgment for defendant, and plaintiff brings error.

*Reversed, and New Trial Granted.*

*Charles E. Hogg* and *Somerville & Somerville,* for plaintiff in error.

*Brown, Jackson & Knight,* for defendant in error.

ROBINSON, PRESIDENT:

Norvell, the plaintiff, riding on a platform of a crowded train, fell therefrom and was injured. He sued the railroad company for damages. The company defended upon the ground that there was no negligence on its part; that plaintiff's injury was caused by his own negligence; and that, at any rate, full accord and satisfaction for the injury had been made. The case came on for trial and all the evidence was adduced before the jury. The defendant moved the court to direct a verdict in its favor. The motion was granted, verdict for the defendant was returned,

and judgment upon the same was entered. The plaintiff asks a reversal of that judgment.

Was the case one for jury determination?· It is contended that the evidence was conflicting and that therefore the case should have been submitted to the jury. The pleadings made the case to involve two main inquiries—whether negligence on the part of defendant in the overcrowding of its cars caused· plaintiff's injury, and, if so, whether accord and satisfaction therefor had been made. A conflict of evidence as to each of these propositions is claimed.

It is negligence in a passenger, under ordinary circumstances, to stand upon an open platform of a rapidly moving railroad car. If one voluntarily and unnecessarily takes such position and is injured while there he cannot recover damages. His contributory negligence bars recovery. But to ride in such place is not always a negligent act. Whether it is negligent to ride on the platform may depend on circumstances. If the train is so crowded that one cannot reasonably enter a car, and no safer place on the train is reasonably obtainable, it is not negligent to ride on the platform when the circumstances thus forces the passenger to do so and the carrier acquiesces in the use of such accommodations by collecting fare for the same or by some other indicative act. What other choice has a passenger but to ride on the platform when the carrier, negligently or unavoidably, fails to provide safer accommodations for him? Must he forego his journey and the engagements dependent upon it, or his return to home at the expected time? It is not reasonable to say that he is obliged to do so. He may accept such accommodations when they are the best offered to him and rely upon the carrier to take the greater care and diligence in transporting him which are commensurate with the increased dangers of the situation in which it has placed him as a passenger. The carrier's duty to him in such situation is to use the high degree of care which its act in undertaking to carry him on the platform demands. If it fulfills that duty, and is free from negligence in other particulars, it may be absolved from damages if he is injured. Its liability for injury to him in the premises is not absolute. But injury to him in such dangerous situation, if he is obliged to take that place of carriage for want of a safer one, may make a *prima facie* case

of liability. The liability will not exist, however, when the carrier shows that it exercised reasonable diligence to provide cars for his safe carriage, and, with a fair excuse for failure to provide them, used the increased care demanded by the lack of a safer place for his transportation. Nor will the liability exist when it appears that the passenger, by not conducting himself with the care and prudence which his position on the platform required, did that which was the proximate cause of his injury. Baldwin on American Railroad Law, 309; Moore on Carriers, 856; Hutchinson on Carriers, (3d Ed.) sections 1197, 1198; 6 Cyc. 623, 653.

If a railroad sees fit to earn a revenue by offering to the public hazardous accommodations on the platform, why should it not assume liability for the dangers incident to its own act in so doing? In justice and reason it must do so, unless it shows that it provided the best accommodations that it could under all the circumstances attending the running of its train and then exercised the degree of care that it owed to those it undertook to carry in those accommodations. This is neither a strict nor an unjust rule. If the carrier is taken unawares by unusual and unexpected demand for passage and has not safe accommodations to offer, it may justly and without liability decline to take on board more than the room within its cars will admit. The conductor in charge of the train may refuse to receive passengers that by reason of unavoidable circumstances cannot be given safe places of carriage. To do this is surely within the line of his authority. He is in charge of the train and must necessarily represent the carrier in the transportation of passengers thereon. On the other hand, when he permits passengers to ride on the platform because there is no room for them inside, and recognizes them as passengers and not trespassers by accepting fares for such carriage, or by doing some other act indicative of the fact, he also indeed represents the company. It is within the line of his duty and authority, and he binds the company by the act. Baldwin on American Railroad Law, 311. What weight can be given the notice which is usually posted on the cars that "passengers are not allowed to stand on the platform" if in fact passengers are allowed to stand there for the convenience of the company? Surely none. The company waives this notice and the rule which it recites

when, for its own convenience and gain, it receives passengers
as such on the platform—uses the platform to earn a revenue.
It is nonsensical to give force to such rule when the company
does not enforce the same, but violates the rule for its own pur-
poses.  Of course the question whether in a particular case the
rule is violated for the convenience or gain of the carrier is
always an important question to be considered and determined.

A railroad company knows the usual amount of travel on
any one of its trains.  The sale of tickets and the reports by
the conductor or train auditor give it accurate basis of informa-
tion upon which it can furnish cars to meet all usual demands
for passage.  And when it is advised of an occasion that will
make demand upon any of its trains for more than the usual
accommodations, it owes a duty to the public to take reasonable
precaution to furnish the same.  Particularly is this so when
excursion occasions are advertised by the railroad company and
excursion tickets sold.  If it is made to appear that an over-
crowding of cars was so great that passengers were compelled
to ride on the platforms, that the lack of sufficient room was
due to the negligence of the company itself, that the passengers
were accepted for carriage on the platforms, and that such
conditions and acts caused injury to a passenger, why should
not the company be liable in the premises?  Railroad companies
seek and demand much from the public.  They are entitled to
the goodwill and fair consideration which the people through
right views and just laws should always give them.  They are
the great commercial arteries which indeed feed our prosperity
and give life and vitality to our riches and comfort.  But they
owe a reciprocal relation to the public.  They are in duty bound
to render good and reasonable service and at all times to refrain
from neglect, carelessness and imposition in their operations.
They peculiarly owe a duty to provide safe and sanitary accom-
modations for passengers—to refrain from imposing conditions
that cause the inconvenient and dangerous overcrowding of
trains and the unhealthy and barbarous use of filthy stations.

Since it depends upon the circumstances of each particular
case whether the act of a passenger in using the platform as a
place of carriage is negligence on his part, the question is usually
one for jury determination.  6 Cyc. 654.  It is always a ques-
tion for the jury, and is not determinable by the court as a

matter of law, when circumstances reasonably excusing the passenger for riding there are not admittedly shown. If the alleged necessity for riding on the platform is based on an overcrowding of the train and evidence supporting the fact of overcrowding is introduced which is met with other evidence tending to disprove the fact, a conflict is presented which it is the province of the jury to settle. Again, if there are conflicting facts and circumstances in relation to the excuse of the carrier for its alleged failure to provide ample places of safe carriage, or in relation to the degree of care which it used for the transportation of one necessarily on the platform, the jury should pass upon them. It is the province of the jury to pass upon conflicting oral testimony of witnesses which is given in their presence, and that province should not be invaded. But when the evidence, though orally given in the presence of the jury, and though conflicting as a whole, embraces uncontradicted facts or circumstances which cause the case admittedly to turn in favor of one of the parties so that a verdict against him would be set aside, the court may properly direct a verdict in his favor. The court cannot properly direct a verdict, however, in a case turning on a conflict of evidence which makes the material facts so doubtful that a verdict in favor of either party would be sustained. _Ketterman_ v. _Railroad Co.,_ 48 W. Va. 606; _White_ v. _Brewing Co.,_ 51 W. Va. 259; _Coalmer_ v. _Barrett,_ 61 W. Va. 237; and other cases.

Now, in the case before us, the first pertinent inquiry in relation to the alleged negligence of the railroad company is whether a safe place of carriage was provided for plaintiff. Was plaintiff, as he claims, compelled by insufficient passenger accommodations to ride on the platform? Or, did he voluntarily and unnecessarily ride there so that his own act in thus doing was the proximate cause of his injury? Then, if the overcrowding was so great that plaintiff was excusable for taking passage on the platform, was that overcrowding the fault of the railroad company in failing to provide ample accommodations? Or, was the overcrowding so unexpected and unusual that provision reasonably could not be made to prevent it? Did the company accept and receive plaintiff as a passenger on the platform of its train for lack of space in the cars? If so, and if it was excusable therein, did it then exercise the degree of care

that was due to plaintiff in the hazardous position in which he was permitted to ride? Readily is it to be seen that a charge of negligence involving so many questions of fact must make, in practically every instance, a case for the jury. The determination of any of these questions would usually and naturally turn upon a mass of conflicting facts and circumstances. So it is in this case. A substantial conflict of testimony is involved. No decisive facts are so admittedly shown as to make the general issue determinable as one of law, Many facts and circumstances tend to prove that plaintiff made a reasonable effort to enter the cars, that he was prevented by the overcrowding from doing so, and that he was thus compelled to ride on the platform. Other facts and circumstances tend to prove that there was ample room in the cars and that he took passage on the platform from choice. If this primary issue should be determined in favor of plaintiff, then conflicting facts and circumstances appear which must be settled in order to determine whether the company was negligent by an inexcusable failure to provide ample cars; and, if not so negligent, whether it then failed to take the degree of care that it owed plaintiff because of the unsafe position in which he was obliged, through unforeseen and unavoidable circumstances, to ride. It is not our purpose to multiply words by a recital of the particular facts pertaining to this case. It suffices to say that witnesses as to controlling facts and circumstances on the proposition of negligence are in direct contradiction.

To support its plea of accord and satisfaction the defendant railroad company introduced a receipt for seventy-five dollars, signed by the plaintiff, which recites in substance that the sum is paid by the company and accepted by plaintiff in full payment of any liability for his injury. Plaintiff admitted that the signature thereto is his own. He, however, introduced evidence tending to prove that he was deceptively induced to sign the receipt by representatives of the company at a time when he was in the hospital suffering from the injury, lying on his back, with his senses deadened by pain and narcotic medicines; that he was made to understand and believe that the company was gratuitously giving him the amount for the purpose of paying the hospital charges and for none other; that the paper which he was asked to sign was falsely represented to him as a check

for that purpose; and that the paper was so folded when presented to his reclining position for signature that he was deceived, excusably on his part, as to its real character and purport. The evidence of his witnesses in this behalf is flatly contradicted by the company's physician, in whose hospital he was, and who 'was present at the time the receipt was obtained. Thus we have a conflict of testimony in this branch of the case also. If the paper was obtained by deception and fraud it cannot sustain the plea of accord and satisfaction. If the receipt was fraudulently obtained it is no bar to this action. 24 Amer. & Eng. Enc. of Law, 308, 309. While it is admitted that plaintiff did not read the paper before signing it, yet there is evidence tending to prove that he used as much prudence and circumspection as a man ordinarily would under the circumstances stated as existing at the time. Whether he did exercise such prudence and circumspection, whether he was incapacitated so that he was thrown off his guard, 'were questions to be determined by the jury. The disputed questions of fact relating to the validity and binding force of the terms of the paper claimed to be a release should have been submitted to the jury under proper instructions by the court as to the law in the premises.

The case was improperly taken from the consideration of the jury. It involved in its material points such disputed questions of fact that a case was not presented for the court's action in directing a verdict. Jury trial in cases to which it rightly belongs is sacredly guaranteed to all. This fundamental right must not be curtailed. The judgment will be reversed, the verdict set aside, and a new trial granted.

*Reversed and New Trial Granted.*