WILLIAM YUNCKE

*v.*

W. P. WELKER

(No. 9730)

Submitted September 25, 1945. Decided December 4, 1945.

*Tom B. Foulk,* for plaintiff in error.

*Handlan, Garden, Matthews & Hess,* for defendant in error.

HAYMOND, JUDGE:

Upon this writ of error the defendant seeks the reversal of an adverse judgment for $5,175.00 entered by the Circuit Court of Ohio County upon the verdict of a jury in the trial of an action to recover damages for alleged personal injuries prosecuted by the plaintiff in that court.

The judgment is assailed in this Court on three principal grounds: (1) The defendant was not negligent; (2) the plaintiff was guilty of contributory or concurrent negligence barring recovery; and (3) the verdict is excessive. The defendant assigns a number of errors.

The plaintiff, William Yuncke, a carpenter by occupation, then seventy-one years of age, about eight o'clock on the morning of October 11, 1943, while on his way to work, was walking on a public highway known as Bethany Pike, which extends through Greggsville, a suburb of Wheeling, in Ohio County, West Virginia, in a westerly direction toward its junction with another highway referred to in the evidence as Potomac Road. He had been walking on the southerly side of the road near a wire barrier which separates the edge of the road from a nearby ravine through which runs a small stream of water. There is no sidewalk at that point. Between the fork of the pike, which is formed by its junction with Waddles Run Road to the east, and Potomac Road on the west, Brown Street, a highway approximately fifteen feet in width, enters the pike from the north. On the north side of the pike there is a sidewalk four feet wide which extends west from Brown Street to the intersection of Potomac Road with the pike. The plaintiff had reached a point on the south side of the pike about three feet from its southern edge when he started to cross to the north side to continue west of the sidewalk. He testified that before doing so he stopped and looked or glanced both east and west on the pike, and seeing and hearing no automobile, he started directly across the road which, at that point, is eighteen feet, nine inches in width. He was walking at a medium gait. About two hundred and twenty-seven feet east of that point, and at the entrance of Waddles Run Road to the pike, the pike turns abruptly to the north and then continues in an easterly direction on an ascending grade.

The automobile of the defendant, as it approached the entrance of Brown Street to the pike, and in which the defendant was riding in the front seat with his

seventeen year old son, who was operating it at the time, was traveling west on the pike, in the same direction in which the plaintiff had been walking before he started to cross the pike from the south to the north side. The defendant's son had had only slight experience in driving the automobile and had driven it only once before on that section of the road. At a point on the pike variously fixed by witnesses at from four to thirty-three feet west of the entrance of Brown Street, the automobile struck the plaintiff when he was at or near and about to step upon the sidewalk on the northern side of the pike, knocked him down, passed over one of his legs and continued in motion for a distance of from fourteen to forty-one feet beyond or west of the point of collision before it was stopped.

The plaintiff was injured in his head, chest, back and legs. He sustained a deep cut on his head, which bled freely and left blood stains in the road at a point about three feet south of the sidewalk and about eighteen feet west of the Brown Street intersection. He had contusions and abrasions on the right side of his chest, skin abrasions on his arms and legs and suffered pain in his right knee, both legs, his right chest and his back. He experienced severe shock but he sustained no fractures. Soon after the collision he was taken to a hospital where he remained and was treated for his injuries for twenty-two days.

When the automobile was brought to a stop the plaintiff was lying in the road on his left side with his face to the west. His feet were from six inches to two feet from the northern curb at the sidewalk. His head, pointing toward the center of the road, was about three and one-half feet from its northern edge. Before it struck the plaintiff the automobile mounted the curb at or near the Brown Street intersection and continued partly on the sidewalk and partly on the road for about sixty feet, its right wheels being about the center of the four foot walk. It was traveling in that position when it came in contact with the plaintiff. The speed of the

automobile at or shortly before the collision was esti-
mated by the various witnesses at from ten to thirty
miles per hour, and the plaintiff was walking at the rate
of from two to three miles per hour.

The evidence as to the manner in which the collision
occurred is in sharp conflict. The plaintiff did not see
the automobile before it struck him. He heard no sound
of a horn and no warning of the approach or the pres-
ence of the automobile. The defendant, whose occu-
pation is that of a trust officer for a Wheeling Bank,
and his son, the driver, the only occupants of the auto-
mobile, are the only participants who observed the col-
lision and saw all the acts of the persons involved in it.
The defendant's son was in military service at the time
of trial and he did not testify.

The defendant testified, in substance, that he first saw
the plaintiff and that his son sounded the horn of the
automobile when it was one hundred and twenty-five
feet east of the plaintiff while he was walking west on
the south side of the pike; that the plaintiff was then
about one hundred and twenty-five feet from the place
at which he was struck by the automobile; that the
speed of the automobile, when the defendant first saw
the plaintiff, was about fifteen miles per hour; that the
plaintiff gave no indication that he heard the horn; that
the plaintiff continued to walk on the creek or south
side of the road; that he left that side of the road about
seven feet beyond or west of Brown Street, when the
automobile was within a few feet of him, and darted
directly across the road toward the sidewalk; that the
left front part of the automobile struck him; that the
speed of the automobile was then fifteen miles per hour;
that the automobile was swerved to the right to avoid
striking him and went upon the sidewalk; and that the
automobile continued to go forward about twenty-five
feet after it struck the plaintiff. The defendant also
testified that the plaintiff gave no indication that he
was going to cross the road before he suddenly started
to do so; that there was no change in the plaintiff's gait;

and that the plaintiff did not stop walking when he turned to the right in the act of crossing the pike. The defendant further testified that during the afternoon of the day the collision occurred he talked with the plaintiff at the hospital and that the plaintiff then told him that he did not hear the automobile horn and did not look before crossing the road. The plaintiff denied that he made these statements.

The evidence in behalf of the plaintiff is contradictory of the defendant's version of the way in which the collision occurred. The plaintiff produced as witnesses several boys and girls of high school age who were either near the intersection of Potomac Road and the pike on the north side of the pike, or on the opposite side of the pike near a bridge. All of them, at the time, were west of the point of collision and within sight of it. Most of them either heard or saw the automobile strike the plaintiff. None of them testified that the automobile horn was sounded. Some of them said they did not hear any sound of the horn, and that they saw both the plaintiff and the automobile before it hit him. One of them, Robert Vacheresse, saw the plaintiff, when he started to cross the road, and the automobile which, at that time, was to the east of him, coming around the curve in the forks of the road. He says it was then traveling at twenty-five to thirty miles per hour. He saw it pass over the plaintiff after he was knocked to the street. Another eye witness, Emma Shuman, said that the plaintiff had already started to cross the pike when the automobile turned the bend at the forks of the road, which was more than two hundred feet from the point of the accident. She stated that the automobile maintained the same speed from the time she first saw it until it struck the plaintiff and that it was running fast. She could not estimate its speed in miles per hour. Another eye witness, Mary Chapline, testified that she saw the automobile when it was forty feet away from the place at which it struck the plaintiff and that it was twenty-five or thirty feet distant from him when he was about to step on the sidewalk. She did not hear any

horn blow. Mae Chapman, one of the group, stated that she saw the automobile a little back from the plaintiff when he had his foot on the curb at the sidewalk.

The plaintiff's theory of the case is that the collision was caused by the negligence of the defendant and that the plaintiff was without fault. The defendant's theory is that the defendant was not negligent, that the plaintiff was negligent in failing to see the approaching automobile, which was seen by most of the witnesses, and that the negligence of the plaintiff in attempting to cross the road without looking was responsible for the collision and his resulting injuries.

There is substantial evidence in support of each theory. Under the evidence the jury could have found for either party upon the factual issues in the case. In such circumstances the questions of negligence and contributory negligence are for the jury. *Chambers* v. *Princeton Power Co.*, 93 W. Va. 598, 117 S. E. 480; *Walters* v. *Appalachian Electric Power Co.*, 75 W. Va. 676, 84 S. E. 617; *Ewing* v. *Lanark Fuel Co.*, 65 W. Va. 726, 65 S. E. 200; *Raines* v. *C. & O. Railway Co.*, 39 W. Va. 50, 19 S. E. 565; *Hanley* v. *City of Huntington*, 37 W. Va. 578, 16 S. E. 807. To weigh the evidence and to resolve questions of fact when the oral testimony of witnesses regarding them is conflicting is peculiarly the province of the jury and should not be disturbed by the court. *Thorne* v. *Addison Bros. & Smith*, 119 W. Va. 479, 194 S. E. 771; *Jaggie* v. *Davis Colliery Co.*, 75 W. Va. 370, 84 S. E. 941; *Norvell* v. *Railway Co.*, 67 W. Va. 467, 68 S. E. 288. The jury are the sole judges of the credibility and the value of conflicting testimony of witnesses; and where the facts are controverted the question of negligence is for jury determination. *Jaggie* v. *Davis Colliery Co.*, 75 W. Va. 370, 84 S. E. 941. The same rule applies to the question of contributory negligence; *Foley* v. *City of Huntington*, 51 W. Va. 396, 41 S. E. 113; *Ewing* v. *Lanark Fuel Co.*, 65 W. Va. 726, 65 S. E. 200; *Lindsay* v. *Produce Co.*, 91 W. Va. 118, 112 S. E. 310.

The defendant vigorously denies that he was negligent, but he insists that, even if he was negligent, the acts and the conduct of the plaintiff in crossing the pike without looking before he started, and in not seeing the automobile before it struck him, convict him of contributory negligence as a matter of law. On the question whether he looked the evidence is conflicting, the plaintiff having sworn that he looked both ways, did not see or hear anything, and immediately started across the street. The defendant testified that when his son blew the horn of the automobile, the plaintiff gave no indication that he heard it, and that the plaintiff was then walking with his back to the automobile. The inference from this testimony is that the plaintiff did not look. The statement of the defendant that the plaintiff told him, at the hospital, during the afternoon of the day of the collision, that he did not look when he crossed the road, is denied by the plaintiff. The jury evidently believed the plaintiff on this disputed question of fact, and its finding on that issue should not be disturbed.

If the plaintiff looked, as the jury, by its verdict, necessarily found that he did, he was not, as a matter of law, required to look continuously, while crossing the road, to ascertain if the automobile of the defendant was approaching, under penalty of being contributarily negligent. Having looked and found the highway free from nearby traffic, he had the right to rely upon the exercise of reasonable care by the defendant to avoid injuring him while he was on the highway. *Deputy* v. *Kimmell*, 73 W. Va. 595, 80 S. E. 919.

Likewise the failure of the plaintiff to see the automobile, in the circumstances disclosed by the evidence, does not, as a matter of law, amount to contributory negligence. Whether he was negligent in that respect was a question for the jury. *Sewell* v. *Lawson*, 115 W. Va. 527, 177 S. E. 293. When reasonable men, however, can draw only one conclusion from undisputed facts, contributory negligence becomes a question of law for the court. *Taylor* v. *City of Huntington*, 126 W. Va.

732, 30 S. E. 2d 14; *Jackson* v. *Chesapeake & Ohio Ry. Co.*, 110 W. Va. 568, 149 S.E. 517; *McLeod* v. *Charleston Laundry Co.*, 106 W. Va. 361, 145 S. E. 756; *Coleman* v. *Norfolk & Western Ry. Co.*, 100 W. Va. 679, 131 S. E. 563; *Daniels* v. *Chesapeake & Ohio Ry. Co.*, 94 W. Va. 56, 117 S. E. 695; *Johnson* v. *B. & O. R. Co.*, 25 W. Va. 570. The questions of negligence and contributory negligence are for the jury, when the facts, though undisputed, are such that reasonable men may draw different conclusions from them. *Taylor* v. *City of Huntington*, 126 W. Va. 732, 30 S. E. 2d 14. When a case involves conflicting testimony and circumstances, and has been fairly tried, under proper instructions, as here, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without any evidence to support it. *Dangerfield* v. *Akers*, 127 W. Va. 807, 33 S. E. 2d 140; *Webb* v. *Tobacco Co.*, 121 W. Va. 115, 2 S. E. 2d 898; *Ware* v. *Hays*, 119 W. Va. 585, 195 S. E. 265.

The defendant attacks the verdict as excessive. As bearing upon the question of the amount of compensatory damages to which the plaintiff is fairly and reasonably entitled under the evidence, it should be observed that the plaintiff was seriously injured in various parts of his body. He suffered from a deep cut in his head, which required four sutures to close, and severe and painful bruises on his chest, back, legs and arms. He was totally disabled and confined and treated daily by a physician in a hospital for twenty-two days. During at least a part of that time he experienced intense pain. For two weeks after he went home from the hospital his ankle was swollen and discolored. Some pain from his injuries still persisted at the time of the trial, which took place more than a year after the collision. He has limped since the collision, but he did not limp before he was struck by the automobile.

There is medical testimony to the effect that this condition is due to the injury, and that it is permanent and will likely continue indefinitely or for the rest of his

life. Since the accident he has constantly complained of pain in his head, back and legs. His chest and the region of his hips are still sore; and when he steps on his right foot he feels pain which extends to his shoulder. At times the pain goes through his body, across his shoulder, and draws his hands tight. He did not experience these sensations before he was hurt in the collision. The pain in his chest may continue indefinitely. He is still short of breath and can not walk for any considerable distance. Since he was injured he has not been physically able to work as a carpenter. He can not climb or get to places necessary for him to reach to perform the usual and ordinary tasks of his trade. His physical condition since the collision, being of indefinite duration, can not be considered, at his age, as merely temporary.

Besides the pain and the physical suffering, his earning capacity has been materially lessened and impaired. At the time of his injury he was capable of earning as much as $600.00 per year, and employment at that rate or more was available to him. During ten months of the year in which he was injured he earned $630.00. Since the accident he has sustained a substantial loss in wages due to his inability to work as he formerly did. His hospital and medical expenses, doctor bill, and the value of his glasses and clothing, which were destroyed in the collision, aggregate the sum of $174.55. Though this item of his claim for damages is relatively small in comparison with the elements of disability, pain and suffering, and loss of wages, it represents the expenditure of a substantial amount and indicates the serious character of the injury to his person. There is conflict in the medical testimony as to whether all the ailments with which the plaintiff was afflicted at the time of the trial were caused by the collision and as to the length of time his present condition will continue. The decision on these questions was for the jury, and by its verdict in his favor, the jury was convinced by the evidence in support of the contentions of the plaintiff on those points.

The findings on these facts will not be interfered with by this Court.

In an action to recover for personal injuries the damages are unliquidated and indeterminate in character, and the assessment of the amount is generally for the jury. *Given* v. *Diamond Shoe Co.*, 84 W. Va. 631, 101 S. E. 153. The only limitation which the law imposes is that the damages be fairly compensatory and not such as to show partiality, prejudice or misconduct upon the part of the jury. *Gibbard* v. *Evans*, 87 W. Va. 650, 106 S. E. 37; *Bowling* v. *Guyan Lumber Co.*, 105 W. Va. 309, 143 S. E. 86. In a personal injury case no rule of law fixes the measure of damages; the law leaves the amount of damages for tort to the sound discretion of the jury. *Webb* v. *Chesapeake & Ohio Ry. Co.*, 105 W. Va. 555, 144 S. E. 100; *Stewart* v. *Pollack-Forsch Co.*, 105 W. Va. 453, 143 S. E. 98. Though a court may set aside a verdict as excessive, its authority to do so may not be arbitrarily exercised. It is a general rule that where damages are indeterminate, mere difference of opinion between the court and the jury as to what the verdict should be, will not justify the court in disturbing the verdict. To warrant such action the verdict must evince passion, prejudice, partiality, or corruption upon the part of the jury. *Meadows* v. *Corinne Co.*, 115 W. Va. 522, 177 S. E. 281; *Thalman* v. *Schultze*, 111 W. Va. 64, 160 S. E. 303; *Truschel* v. *Amusement Co.*, 102 W. Va. 215, 136 S. E. 30; *Wilson* v. *Amusement Co.*, 99 W. Va. 290, 128 S. E. 381. The trial judge in this case, by entering judgment upon the verdict, gave his approval to the amount of the jury's award, and his action in so doing should be given due weight and consideration in the appellate court. In the memorandum containing the opinion of the Circuit Court in overruling the motion to set aside the verdict, the judge of that court expressly stated that had he been on the jury he would have been inclined to vote for the amount which it found in its verdict and that he perceived nothing to indicate that the jury entertained any prejudice, passion or other im-

proper motive. No indication of any passion, prejudice, partiality, corruption, or mistaken view of the case appears in this record; and under the above stated rule, the verdict, though liberal in amount, can not be regarded as excessive or set aside by this Court for that reason.

The defendant complains of the refusal of the trial court to sustain his motion to direct a verdict for the defendant at the conclusion of the evidence introduced in behalf of the plaintiff, on the ground that the plaintiff was guilty of contributory or concurrent negligence and for that reason could not recover. After the court overruled the motion, the defendant duly excepted and then proceeded to introduce evidence in his behalf in defense to the plaintiff's claim. What has already been said, in resolving the question of the purported contributory negligence of the plaintiff, disposes of the merits of this contention. Moreover, by introducing evidence in his defense after the motion was overruled by the court, the defendant waived his exception to the action of the trial court on that point. *Fuller* v. *Margaret Mining Co.*, 64 W. Va. 437, 63 S. E. 206. In *Morgan* v. *Insurance Co.*, 80 W. Va. 1, 92 S. E. 84, this Court, in discussing this question, said: "The defendant waived the error, if such it was, by thereafter introducing evidence on its behalf. This rule has been so frequently announced by this Court that a citation of cases is unnecessary to sustain this holding."

The defendant also assigns as error the action of the trial court in refusing to set aside the verdict on the ground that certain remarks of counsel for the plaintiff, in their arguments to the jury, were inflammatory and prejudicial in their nature. No objection or motion was made to the court to direct the jury to disregard the statements until the filing of the motion to set aside the verdict. The challenged remarks were, in effect, that counsel for the plaintiff, when the action was brought and the declaration filed, did not know the extent of the plaintiff's injuries and that the claim should have been for several times $10,000 because that amount was not

adequate; and that the verdict of the jury should be substantial as the plaintiff had ten to fifteen years yet to live. When these statements were called to the attention of the trial judge, for the first time, upon the hearing of the motion to set aside the verdict, he expressed the opinion that they were neither prejudicial nor inflammatory. Though the remarks in question may have been extravagant, not justified by the evidence, and beyond the scope of legitimate argument, it can not be said that they produced any undue influence upon the action of the jury. But if they should be regarded as prejudicial, the defendant, in failing to make timely and proper objection, by motion for a mistrial or for an instruction by the court to disregard them, or by other appropriate method, and thus give the trial court an opportunity to do so before the verdict was returned, waived the effect of the prejudicial remarks. 2 R.C.L. 438, 439; *Deitz* v. *County Court*, 122 W. Va. 296, 8 S. E. 2d 884; *Given* v. *Diamond Shoe Co.*, 84 W. Va. 631, 101 S. E. 153.

The final assignments of error have to do with the admission of evidence.

The court, over objection of the defendant, permitted the plaintiff to testify concerning the amount of his earnings as a carpenter within a period of five years prior to the time of his injury. The defendant objects to this evidence as being too remote in time and insists that its admission was reversible error. This contention is not well founded. Whether evidence is too remote in time to be admissible is generally for the trial court to determine in the exercise of a sound discretion. Evidence, 20 Am. Jur. 243; 10 R. C. L. 926; *Sorrell* v. *Scheuer*, 209 Ala. 268, 96 So. 216; *Raymond* v. *Flint*, 225 Mass. 521, 114 N. E. 811. It does not appear that the admission of this evidence amounted to an abuse of discretion. This Court, in dealing with this subject, has said that an abuse of discretion is more likely to result from excluding, rather than admitting, evidence that is relevant but which is remote in point of time, place and

312

circumstances, and that the better practice is to admit whatever matters are relevant and leave the question of their weight to the jury, unless the court can clearly see that they are too remote to be material. *State* v. *Yates*, 21 W. Va. 761.

The defendant also complains of the action of the court in admitting, over his objection, evidence on the question of the experience and the skill of the driver of the defendant's automobile, and particularly testimony that he had no license or permit to operate the automobile at the time of the collision. The trial court was careful to instruct the jury that the failure of the driver to have a license or permit would not justify the jury in finding a verdict against the defendant; but that the plaintiff's claim was based upon negligence resulting from the improper driving of the automobile. The evidence on the question of the experience and the skill of the defendant's son, as an automobile driver, was material and, for that reason, admissible. The instruction by the court cured the objectionable features concerning the absence of a license or permit.

Having discussed and disposed of the various assignment of error presented by the defendant, and perceiving no reversible error in the case, we affirm the judgment of the trial court.

*Affirmed.*