PANSY RUTH CAMPBELL

*v.*

CLIFFORD CAMPBELL, *et al*

(No. 12122)

Submitted January 24, 1962. Decided February 27, 1962.

*Chester Lovett, Sam D. Lopinsky,* for plaintiffs in error.

*Kay, Casto & Chaney, John S. Haight, John E. Davis,* for defendant in error.

HAYMOND, JUDGE:

This is an action of trespass on the case instituted in the Court of Common Pleas of Kanawha County in April, 1957, in which the plaintiff, Pansy Ruth Campbell, seeks to recover damages for personal injuries which she alleges were caused by the negligence of the defendants, Clifford Campbell and Jewell Campbell, his wife, in connection with an automobile collision which occurred during the evening of July 15, 1956, in Kanawha County, West Virginia.

To the declaration of the plaintiff the defendants filed a plea of release, and to the plea of release the plaintiff filed a replication. Upon the trial of the case the jury returned a verdict of $12,000.00 in favor of the plaintiff and the trial court rendered judgment in that amount on September 24, 1959. Upon writ of error the Circuit Court of Kanwha County affirmed the judgment of the court of common pleas on February 27, 1961, and to that judgment this Court granted this writ of error and supersedeas upon the application of the defendants.

Between nine o'clock and nine thirty o'clock in the evening of Sunday, July 15, 1956, the plaintiff, Pansy Ruth Campbell, operating a 1955 Pontiac automobile owned by her husband, accompanied by her son, an infant of tender years, was proceeding toward Charleston on U. S. Highway No. 21 a short distance behind

another automobile operated by Arthur J. Summers. At or near the intersection of Sugar Creek Road with U. S. Highway No. 21 the driver of the Summers automobile stopped it for the purpose of making a left turn into the Sugar Creek Road. According to the testimony of the plaintiff she stopped the automobile driven by her at a distance of about five feet behind the Summers automobile and within about a minute and a half after she had stopped her automobile it was struck from the rear by an automobile driven by the defendant, Jewell Campbell. The impact of the collision knocked the automobile in which the plaintiff was riding into the Summers automobile and forced it completely across the left side of the road. In the collision the automobile driven by the plaintiff was damaged and the plaintiff, who was thrown against the seat of her automobile which was broken by the impact, received injuries which produced pain in her back and her neck.

The plaintiff, who was employed as a cashier or checker at a Kroger Company market, worked at her employment the day after the collision but while at work experienced pain in her back and her neck. The second day after the collision she was unable to return to her work and on that day, July 17, 1956, at the clinic in the Charleston General Hospital, she consulted and was examined by her family physician who prescribed treatment of heat and hot baths. She consulted this doctor again two or three months after the collision but received no relief from the recommended treatment. On January 15, 1957, six months after her injury, an X-ray having been taken under the direction of a second doctor, she consulted a third doctor, who prescribed substantially the same method of treatment for the pain and discomfort which the plaintiff experienced in her back and in the area of her spine. The treatment prescribed by the third doctor, an orthopedic surgeon, likewise resulted in no relief to the plaintiff, and on February 13, 1957, she consulted a fourth doctor, a general practitioner, who diagnosed

her condition as an old injury to the coccyx and lumbosacral strain. On February 18, 1957, he performed a surgical operation which resulted in the removal of the two lower segments of the coccyx of the plaintiff who after the surgery was hospitalized for a period of about nine days.

The plaintiff contends and the defendants deny that the injury to the coccyx was caused by the collision. On this point the medical testimony is in conflict. It appears that except for her absence on July 17, 1956, the plaintiff was regularly employed during the period July 1956 to January 1957 but that from January to June or July 1957 she was unable to work during a large part of the time. The plaintiff testified that as a result of her injury and her surgical operation she was unable to work at her employment for a total period of twenty four weeks.

Though the defendant, Jewell Campbell, who at a speed of approximately thirty five to forty miles per hour was following the automobile driven by the plaintiff, admitted that the automobile driven by her collided with the rear of the automobile driven by the plaintiff, her testimony was to the effect that the automobile driven by the plaintiff was moving or did not stop for "any length of time at all" before the collision; that the automobile driven by the plaintiff suddenly "cut off the road and I cut off the road behind her and in the dust and everything we got back on the road and I hit her."; and that before this occurred the automobile driven by the plaintiff went on the berm to the right, returned to the road, and the defendant then returned to the road and struck the automobile in front of her.

Sometime in July after the collision the plaintiff and Brock, an insurance investigator who represented the defendants, conferred about a settlement of the claims of the plaintiff and her infant son arising from the collision. The plaintiff went to the office of the investigator on two occasions and the matter of settle-

ment was discussed. At one or perhaps both of these meetings the husband of the plaintiff was also present. Following their negotiations for settlement of the claims and according to an arrangement between Brock and the plaintiff and her husband they met on the morning of August 18, 1956, at the place of business of the Park Pontiac agency in Charleston, where the damaged automobile driven by the plaintiff had been originally purchased and had been taken to be repaired. At that time and place written releases, on printed forms supplied and prepared by Brock, the provisions of which completely released all claims of the plaintiff and her husband individually and as parents of their infant son resulting from the collision, were signed by the plaintiff and her husband in the presence of a subscribing witness and were acknowledged by them before a notary public.

. The consideration for the parental release which was paid by check was $43.00 and consisted of a charge of $15.00 by a physician who examined the infant, a hospital bill of $18.00, and an additional item of $10.00 for the infant. The consideration for the release covering the claim of the plaintiff signed by the plaintiff and her husband was $460.02, which was also paid by check payable to them and Park Pontiac agency and enabled the plaintiff and her husband to obtain possession of the repaired automobile, consisted of the repair bill of $354.96, the amount of wages lost by the plaintiff for one day of $13.88, a doctor bill of $3.00 which had been paid by the plaintiff, and the additional amount of $88.18, all of which, except the repair bill of $354.96, was accepted and retained by the plaintiff and her husband until the case was called for trial. That release began with the statement in large print "GENERAL RELEASE, HUSBAND AND WIFE" and both releases contained the statement, also in large print, before the space for signature, "CAUTION: READ BEFORE SIGNING.". When the case was called for trial the plaintiff offered to repay and tendered the sum of $460.02 to

the defendants who refused to accept the amount of the tender.

Though there is no allegation in the replication of the plaintiff that the release signed by the plaintiff and her husband on August 18, 1956, was procured by fraud upon the part of the representative of the defendants, it is clear from the evidence introduce in behalf of the plaintiff that her attack upon the validity of the released is based on fraud. Evidence, admitted without objection, which is not technically within the pleadings is properly in the case for all purposes, and may be considered, although it would have been excluded had objection been made. 88 C.J.S., Trial, Section 150, Note 56. In *Rosser-Moon Furniture Company v. Harris,* 191 Okla. 607, 131 P. 2d 1004, the court held in point 2 of the syllabus that "Evidence, inadmissible because not within the issues presented by the pleadings, which is admitted without objection, is to be considered and given the same force and effect as if it were legally admissible." In *Smith v. Townsend,* 21 W. Va. 486, this Court held in point 2 of the syllabus that "If no account of payments is filed with the plea of payment, under sec. 4, ch. 126 of Code of W. Va. no proof can be given by the defendant of any partial payments; but if without objection on the part of the plaintiff the defendant does prove such partial payments, the jury may properly consider such proof and base their verdict upon it." As a general rule when inadmissible evidence is permitted to be introduced without objection, the court and jury may give it the probative effect and value to which it is entitled, notwithstanding it would or should have been excluded if proper objection had been made. 53 Am. Jur., Trial, Section 135; 88 C.J.S., Trial, Section 150a. See also *The Chesapeake and Ohio Railway Company v. Johnson,* 137 W. Va. 19, 69 S. E. 2d 393; *Magruder v. Hagen-Ratcliff and Company,* 131 W. Va. 679, 50 S. E. 2d 488. Under the foregoing authorities the evidence relating to fraud in the procurement of the release, not having been objected to, became a part of the evidence in the case.

Although there is some conflict in the evidence relating to the procurement of the release and its intended scope and operation with respect to its validity as a bar to the right of the plaintiff to recover for the injuries of which she complains, numerous material facts and circumstances with relation to the release are admitted or established by undisputed testimony. The principal conflicts in the evidence relate to the conversation between the plaintiff and her husband and Brock, the place where such conversation occurred, and their conduct in connection with the execution of the releases by the plaintiff and her husband at the Park Pontiac place of business.

The plaintiff and her husband testified that the conversation took place on the sidewalk outside the office in which the releases were signed; that the plaintiff told Brock that she did not want to sign a complete release for the reason that her mother on a previous occasion was involved in an accident and "had trouble over that"; that Brock told the plaintiff he had some papers for the plaintiff and her husband to sign to release the automobile from Park Pontiac because they did not have the money to release it; that the releases were not handed to the plaintiff or her husband and were not read by either of them; that the plaintiff relied upon the representation of Brock that the release applied only to the automobile; and that they did not know that the release was a general release of the claim of the plaintiff. The plaintiff also testified that Brock said "Mrs. Campbell, you have nothing to worry about. If something comes up you have got within a year to do something about it.", and that "As far as the baby is concerned, you can't do anything for him anyway as he is under age."; that neither she nor her husband was seated when they signed the releases which occurred within a period of two to four minutes; and that she and her husband and Brock completed the transaction in a hurry to enable them to return promptly to other work.

The plaintiff's husband testified, contrary to the

testimony of his wife, that Brock "seated us down at the desk", and showed them where to sign the release. He also testified that he did not see the words "CAUTION: READ BEFORE SIGNING" before he signed the release, although she testified that "we just saw, 'Caution: Read Before Signing.' ". His testimony is silent concerning the statement of the plaintiff that Brock told her "You have nothing to worry about. If something comes up you have got within a year to do something about it."

Both the plaintiff and her husband admitted that the consideration of $460.02 for the release of the plaintiff's claim included her loss of wages for one day of $13.88 and the doctor bill of $3.00 paid by her, in addition to the cost of the repairs to the automobile, and the plaintiff admitted that at the time the release was signed on August 18, 1956, she had lost wages for only one day and had told Brock that the amount was $13.88; that when she signed the release she did not think she was seriously hurt; and that she believed her family physician who told her she "had nothing but a slight strain."

In his testimony Brock, a witness in behalf of the defendants, who prepared the releases and was present when they were signed, denied that the plaintiff told him that she wanted to make sure that she was not signing any release for personal injuries because of the unsatisfactory experience of her mother in connection with a release. He also stated that he did not tell the plaintiff that she "had nothing to worry about" and that if something came up she had within a year to do something about it, or that she could not do anything about the baby because he was under age; that he did not make any misrepresentation concerning the character or the contents of the releases; and that the plaintiff and her husband understood that they were general releases. He testified that a complete settlement and the amount of the consideration for each release was understood and agreed to between him and the plaintiff and her husband during the settle-

ment negotiations at his office; that the items included in the consideration for each release were obtained and furnished to him by the plaintiff; that the estimate of the cost of the repairs to the automobile was $443.14, loss of wages for one day was $13.88 and a doctor bill was $3.00, and aggregated $460.02, which was the total amount of her claim; that the actual cost of the repairs to the automobile was less than the estimate of $443.14; that the reason he arranged to have the releases signed at the Park Pontiac place of business was that he did not know the actual cost of the repairs until he went there for the purpose of obtaining the signatures of the plaintiff and her husband to the releases. He also testified that he completed the releases at that time and place; that they were given to the plaintiff and her husband, both of whom had the releases in their hands; that they looked at the releases and that it appeared to him that they read the releases before they signed them; that there has been no complaint about the release signed by the plaintiff and her husband as parents of their infant son; that both of them understood that the release with respect to the plaintiff's claim was to be a release of all claims and that the plaintiff and her husband were satisfied with the release. He further testified that during the settlement negotiations the plaintiff told him that she was all right and that she and her husband wanted to ''go ahead and settle.''

The credit manager of Park Pontiac agency, another witness in behalf of the defendants, who stated that his main interest was the payment of the cost of the repairs to the automobile, testified that according to his memory the plaintiff and her husband arrived first and waited for Brock in the show room and they came into his office together; that he did not recall who were seated and who were standing and did not remember much of the conversation that occurred; that the plaintiff and her husband signed the releases in his presence and that he affixed his signature as a witness; that the cost of the repairs to the automobile was $354.

96, which was less than the estimate of approximately $400.00; that the cost of the repairs was paid by the draft for the release; that, according to his memory, Brock gave the releases to the plaintiff and her husband; that they had each of the releases in their hands; that they looked at them long enough to read them and that as far as he knew they read the releases, although they did not do so aloud; that any conversation between Brock and the plaintiff and her husband was of a peaceful nature and that he did not remember hearing any remark by the plaintiff to the effect that she did not want to sign the release unless it was only for damages to the automobile or that she would not give a release of any personal injury.

The defendants contend, in support of their assignments of error, that the trial court should have directed the jury to return a verdict for the defendants because the release is valid and binding upon the plaintiff and constitutes a bar to any recovery by the plaintiff for the injuries of which she complains; that the trial court should not have given but should have refused to give Instruction No. 1 and Instruction No. 2, offered by the plaintiff; that the trial court should not have refused but should have given Instruction No. 2, Instruction No. 3, Instruction No. 4 and Instruction No. 7, offered by the defendants; and that the verdict of the jury is excessive.

The evidence is sufficient to support the finding of the jury that the defendants were guilty of negligence which was the proximate cause of the injuries of which the plaintiff complains. When the evidence is conflicting, or when the facts, though undisputed, are such that reasonable men may draw different conclusions from them, questions of negligence and contributory negligence are for the jury. *Graham v. Crist,* 146 W. Va. 156, 118 S. E. 2d 640; *Overton v. Fields,* 145 W. Va. 797, 117 S. E. 2d 598; *Lawrence v. Nelson,* 145 W. Va. 134, 113 S. E. 2d 241; *Lewis v. Mosorjak and McDonald,* 143 W. Va. 648, 104 S. E. 2d 294; *Workman v. Wynne,* 142 W. Va. 135, 94 S. E. 2d 665; *Prettyman*

*v. Hopkins Motor Company,* 139 W. Va. 711, 81 S. E. 2d 78; *Davis v. Sargent,* 138 W. Va. 861, 78 S. E. 2d 217. It is the peculiar and exclusive province of the jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting and the finding of the jury upon such facts will not ordinarily be disturbed by this Court. *Graham v. Crist,* 146 W. Va. 156, 118 S. E. 2d 640; *Overton v. Fields,* 145 W. Va. 134, 117 S. E. 2d 598; *Lewis v. Mosorjak and McDonald,* 143 W. Va. 648, 104 S. E. 2d 294; *Workman v. Wynne,* 142 W. Va. 135, 94 S. E. 2d 665; *Davis v. Sargent,* 138 W. Va. 861, 78 S. E. 2d 217; *Gilkerson v. Baltimore and Ohio Railroad Company,* 129 W. Va. 649, 41 S. E. 2d 188; *Yuncke v. Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Thorn v. Addison Brothers and Smith,* 119 W. Va. 479, 194 S. E. 771. For these reasons the finding of the jury on the question of the negligence of the defendants, dealt with as standing alone, will not be disturbed by this Court.

There is sufficient evidence to justify the jury in awarding compensation for the lumbosacral strain, pain and suffering, and the loss of wages sustained by the plaintiff for a considerable period of time. As to these elements of damage there is little, if any, conflict in the evidence. Concerning the injury to the plaintiff's spine, the evidence is conflicting as to whether the condition of her coccyx which rendered necessary the surgical operation was caused by the negligence of the defendants. In an action for personal injuries the damages are unliquidated and indeterminate in character and the assessment of such damages is the peculiar and exclusive province of the jury; and the verdict of the jury in an action for personal injuries will not be set aside as excessive unless it is unsupported by the evidence or is so large as to indicate that the jury was influenced by passion, partiality, prejudice or corruption, or entertained a mistaken view of the case. *Yuncke v. Welker,* 128 W. Va. 299, 36 S. E. 2d 410. There is no showing that the amount awarded by the jury was influenced by passion, partiality, pre-

judice, corruption, or a mistaken view of the case, and there is sufficient evidence to justify the jury in assessing the amount awarded. In consequence the verdict of the jury will not be held to be excessive by this Court.

The decisive question to be determined is whether the release signed by the plaintiff and her husband, relating to the claim of the plaintiff, is a valid release of her claim or is void and of no effect by reason of fraud in its procurement upon the part of the representative of the defendants.

The plaintiff was a high school graduate, a competent cashier, experienced in business affairs and sufficiently intelligent to understand and participate in the settlement of her claim for personal injuries. Her husband had attended high school, had been employed for several years and was likewise sufficiently intelligent to understand and participate in the settlement of a claim. Both of them knew that in their discussion of a settlement with the investigator they were negotiating at arm's length and on equal footing and that he was representing an adverse or hostile interest. The negotiations occurred on three separate occasions during a period of approximately one month after the collision and there is no indication in the evidence that the investigator undertook in any way to hasten the settlement or to force or unduly influence the plaintiff and her husband to settle their claims. The only factors in connection with the transaction which tended to hasten the conclusion of the settlement were the inability of the plaintiff and her husband to obtain possession of the damaged automobile until the cost of the repairs was paid and their lack of the necessary funds for that purpose. There is no showing in the evidence that when they met at the Park Pontiac agency Brock did anything to hasten the settlement or undertook or attempted in any way to control or unduly influence their action in executing the releases at that time. The evidence shows clearly that when the releases were signed the plaintiff had lost wages for only one

day, that she then thought that she was not seriously injured, and that both of them knew that the $13.88, representing her loss of wages for one day, and the doctor bill of $3.00, which were elements of recoverable damages in an action to recover damages for personal injuries, were included in the consideration for the release, as well as a substantial amount in excess of the actual cost of the repairs; that whether the plaintiff and her husband did or did not have the releases in their hands or did or did not read them, a reasonable opportunity to examine the releases was present and nothing occurred to prevent them from reading and familiarizing themselves with their provisions; that the plaintiff did not question the validity of the release relating to her claim until several months after she and her husband signed it and neither she nor her husband contends that the parental release was not a full settlement of their claims nor at any time complained or questioned the validity of that release, which in substantially similar circumstances was signed by them simultaneously with the release of the plaintiff's claim for personal injuries; and that they did not offer to repay or tender the consideration which they had accepted and retained until the case was called for trial approximately two years after the plaintiff had been injured in the collision which was more than a year after surgical operation and her realization that her injuries were of a serious nature. The testimony of the investigator that at one of the meetings the plaintiff and her husband made a complete agreement concerning the settlement; that they understood that the releases were to cover all claims; and that they were satisfied to settle on that basis was not specifically or fully denied by the testimony of either the plaintiff or her husband. The evidence does not satisfactorily show, despite the statements of the plaintiff and her husband to the contrary, that they relied upon or were induced by any misrepresentation of the investigator to sign either or both of the releases.

The law is well settled that when, as here, no fiduciary or confidential relationship exists, fraud in ob-

taining a release is not presumed, but must be clearly and distinctly proved by the person who asserts it. 45 Am. Jur., Release, Section 21. In *Rutherford v. Rutherford,* 55 W. Va. 56, 47 S. E. 240, a case in which the validity of a release was involved, this Court held in point 4 of the syllabus that: ''A person who at the time of the execution of a release knows, or by inquiry might know, the exact nature of the writing, cannot invoke his own neglect to ascertain its nature to impeach it, unless imposed on and mislead by fraud.'' The opinion in that case contains these pertinent statements: ''One who signs a document cannot say he did not understand its import or effect. If he knows, or by inquiry might know, its nature, he cannot invoke his neglect to impeach it by calling his own neglect someone else's fraud.'' This Court has also held that in the absence of fraud by an alleged tortfeasor in the procurement, for valuable consideration, of a release of liability for personal injury to another person, such release may not be repudiated in an action at law by the releasor for damages for the injury. *Janney v. The Virginian Railway Company,* 119 W. Va. 249, 193 S. E. 187.

The plaintiff challenges the validity of the release of her claim on the ground of fraud and misrepresentation in its procurement; and the burden of proof of such fraud rests upon the plaintiff. This Court has consistently held in many cases that fraud is never presumed and when alleged it must be established by clear and distinct proof. Point 5, syllabus, *Bennett v. Neff,* 130 W. Va. 121, 42 S. E. 2d 793; *Brown v. Crozer Coal and Land Company,* 144 W. Va. 296, 107 S. E. 2d 777; *Ward v. Smith,* 140 W. Va. 791, 86, S. E. 2d 539; *State v. Davis,* 140 W. Va. 153, 83. S. E. 2d 114; *Acker v. Martin,* 136 W. Va. 503, 68 S. E. 2d 721; *Carroll v. Fetty,* 121 W. Va. 215, 2 S. E. 2d 521; *Atkinson v. Jones,* 110 W. Va. 463, 158 S. E. 650; *Kincaid v. Evans,* 106 W. Va. 605, 146 S. E. 620; *Swope v. Wade,* 106 W. Va. 265, 145 S. E. 384; *McDonald v. County Court of Logan County,* 94 W. Va. 773, 120 S. E. 891; *Hunt v.*

*Hunt,* 91 W. Va. 685, 114 S. E. 283; *Sansom v. Wolford,* 60 W. Va. 380, 55 S. E. 1020; *Board of Trustees of Oberlin College v. Blair,* 45 W. Va. 812, 32 S. E. 203; *Clay v. Deskins,* 36 W. Va. 350, 15 S. E. 85. Clear and distinct proof of the fraud asserted is missing in this case. The evidence is wholly insufficient to establish, by clear and distinct proof, fraud in the procurement of the release. For that reason relief against the release on the ground of fraud must be denied. *National Fruit Product Company v. Parks,* 108 W. Va. 321, 150 S. E. 749. As the evidence is not sufficient to establish by clear and distinct proof the fraud on which the plaintiff relies to invalidate the release, the verdict of the jury, being without sufficient evidence to support it, must be set aside. A verdict of a jury which is without sufficient evidence to support it, or is plainly against the decided weight and preponderance of conflicting evidence, will on proper motion be set aside by the court. *Preston County Coke Company v. Preston County Light and Power Company,* 146 W. Va. 231, 119 S. E. 2d 420; *Mulroy v. Co-Operative Transit Company,* 142 W. Va. 165, 95 S. E. 2d 63; *Keller v. Wonn,* 140 W. Va. 860, 87 S. E. 2d 453; *Hartley v. Crede,* 140 W. Va. 133, 82 S. E. 2d 672; *Wickline v. Monongahela Power Company,* 139 W. Va. 732, 81 S. E. 2d 326; *Stenger v. Hope Natural Gas Company,* 139 W. Va. 549, 80 S. E. 2d 889; *Ritz v. Kingdon,* 139 W. Va. 189, 79 S. E. 2d 123; *Homes v. Monongahela Power Company,* 136 W. Va. 877, 69 S. E. 2d 131; *Kap-Tex, Inc. v. Romans,* 136 W. Va. 489, 67 S. E. 2d 847; *De-Luz v. Board,* 135 W. Va. 806, 65 S. E. 2d 201; *Gall v. Cowell,* 118 W. Va. 263, 190 S. E. 130; *Cannady v. Chestonia,* 106 W. Va. 254, 145 S. E. 390; *Palmer v. Magers,* 85 W. Va. 415, 102 S. E. 100; *Griffith v. American Coal Company,* 78 W. Va. 34, 88 S. E. 595; *Kelley v. Aetna Insurance Company,* 75 W. Va. 637, 84 S. E. 502; *Sims v. Carpenter, Frazier and Company,* 68 W. Va. 223, 69 S. E. 794; *Coalmer v. Barrett,* 61 W. Va. 237, 56 S. E. 385; *Chapman v. Liverpool Salt and Coal Company,* 57 W. Va. 395, 50 S. E. 601.

As previously indicated, the evidence, in this case,

though in some respects conflicting, embraces numerous admitted or undisputed facts and circumstances which are sufficient to cause this case to turn in favor of the defendants on the question of the validity of the releases. In numerous cases this Court has held that when the evidence, though conflicting as a whole, embraces uncontradicted facts and circumstances which cause the case to turn in favor of one of the parties so that a verdict adverse to such party can not stand, the court should direct a verdict in his favor. *Preston County Coke Company v. Preston County Light and Power Company*, 146 W. Va. 231, 119 S. E. 2d 420; *Mulroy v. Co-Operative Transit Company*, 142 W. Va. 165, 95 S. E. 2d 63; *Adkins v. Aetna Life Insurance Company*, 130 W. Va. 362, 43 S. E. 2d 372; *Norvell v. Kanawha and Michigan Railway Company*, 67 W. Va. 467, 68 S. E. 288, 29 L.R.A., N. S., 325. As the absence of fraud in the procurement of the release is clearly shown by such admitted or undisputed facts and a verdict in favor of the plaintiff invalidating the release on the ground of fraud can not stand, the trial court should have directed a verdict in favor of the defendants and its refusal to direct such verdict constituted reversible error.

Among the cases cited and relied upon by the plaintiff in support of her contention that the release of her claim is invalid and should be set aside on the ground of fraud in its procurement are *Carroll v. Fetty,* 121 W. Va. 215, 2 S. E. 2d 521; *Gall v. Cowell*, 118 W. Va. 263, 190 S. E. 130; *Horton v. Tyree,* 104 W. Va. 238, 139 S. E. 737; *Norvell v. Kanawha and Michigan Railway Company*, 67 W. Va. 467, 68 S. E. 288, 29 L.R.A., N.S., 325. The evidence in each of those cases, unlike the evidence in the case at bar, established facts which were sufficient to justify a finding that the challenged release or written instrument was invalid because it was obtained or procured by fraud, duress, or other invalidating factors which rendered it void or of no force and effect. The material facts established by the evidence in those cases distinguish them from the

facts of this case and for that reason those cases do not apply to or control the decision of the vital question in the case at bar.

Inasmuch as this Court holds that the release relating to the claim of the plaintiff was not obtained or procured by any fraud upon the part of the representative of the defendants and constitutes a valid and complete defense to the claim of the plaintiff, it is unnecessary to consider the instructions mentioned in the assignments of error, or the action of the court, of which the defendants complain, in giving or refusing such instructions.

The judgment of the circuit court and the judgment of the court of common pleas are reversed, the verdict is set aside, and this case is remanded to the court of common pleas for a new trial which is here awarded the defendants.

*Judgment reversed,*
*verdict set aside,*
*new trial awarded.*